Appeal Nos. 2020-1173, 2020-1174

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

**IMPLICIT, LLC,**
*Appellant*
V.

**SONOS, INC.,**
*Appellee*

**KATHERINE K. VIDAL, UNDERSECRETARY OF COMMERCE FOR
INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED
STATES PATENT AND TRADEMARK OFFICE,**
*Intervenor*

Appeals from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in Nos. IPR2018-00766 and IPR2018-00767

**BRIEF FOR INTERVENOR—DIRECTOR OF THE
UNITED STATES PATENT AND TRADEMARK OFFICE**

FARHEENA Y. RASHEED
Solicitor
AMY J. NELSON
Senior Counsel for Patent Policy and
Litigation
PETER J. AYERS
Senior Counsel for Patent Law and Litigation
ROBERT E. MCBRIDE
SARAH E. CRAVEN
Associate Solicitors
Office of the Solicitor, USPTO
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035

July 5, 2024                    *Attorneys for the Director of the USPTO*

Exemplary Claim 1 of Implicit's U.S. Patent No. 7,391,791:

A method for synchronizing a rendering of a content provided by a source at one or more devices which are nodes of a network, the content having a rendering time, the method comprising:

designating one of the one or more devices a master device, the master device having a master device time and a master rendering time;

designating remaining devices among one of the one or more devices as at least one slave device, the at least one slave device having a slave device time and a slave rendering time;

receiving the content for rendering by the master and at least one slave device;

sending from the master device to the at least one slave device an indication of when the master device renders content corresponding to the master rendering time;

determining a master device time domain, a slave device time domain, and a source time domain;

determining whether a time domain differential exists between the master rendering time, the slave rendering time; and

adjusting, based on the received indication, the rendering of the content at the at least one slave device within the slave device time domain and in proportion to the time domain differential when present to account for variation between when the master device and the at least one slave device to render content that should be rendered at the same time.

Appx172.

# TABLE OF CONTENTS

I.  Statement of the Issues.................................................................................1

II. Statement of the Case.................................................................................2

    A.    The IPR Proceedings........................................................................2

    B.    The Board's decisions: Implicit failed to carry its burden of proving conception of the invention prior to Janevski's filing date..................4

    C.    Federal Circuit appeal and remand per *Arthrex* for the limited purpose of allowing Implicit an opportunity for Director review........6

    D.    Corrected inventorship: Implicit hires new counsel, corrects inventorship, and requests a remand for the Board to reconsider its decisions based on the corrected inventorship....................................7

    E.    The Board's decision on remand: Implicit's corrected inventorship has no impact on the Board's decisions due to forfeiture, waiver, and judicial estoppel..............................................................................9

        1.    The Board finds that judicial estoppel precludes Implicit from relying on corrected inventorship to antedate Janevski.....9

        2.    The Board finds that Implicit forfeited and waived its right to rely on corrected inventorship to antedate Janevski.............13

        3.    The Board determines that the Certificates of Correction have no impact on the Board's decisions due to judicial estoppel, forfeiture, and waiver ...............................................15

III. Summary of the Argument..........................................................................16

IV. Argument......................................................................................................18

    A.    Standard of Review ........................................................................18

    B.    The Board did not abuse its discretion in finding that Implicit forfeited its right to rely on a corrected inventorship that includes Guy Carpenter ...............................................................................19

i

1. The Board's scheduling order and Trial Practice Guide both notified Implicit that arguments not timely raised risk forfeiture......................................................................21

2. The Board's timeliness requirement at the risk of forfeiture is also consistent with the statutory framework........................23

3. The Board's forfeiture determination is consistent with the precedent of this Court, the Supreme Court, and a district court.........................................................................................23

C. Implicit's arguments against forfeiture are unconvincing ..................27

1. Implicit's assertion that forfeiture is inapplicable because it was in no way untimely in asserting Mr. Carpenter's inventorship rights under § 256 is unpersuasive........................27

2. Implicit's argument that equitable doctrines such as forfeiture, waiver, and judicial estoppel are inapplicable because it complied with the pertinent statute for correcting inventorship lacks merit...........................................................30

3. Implicit's reliance on *Egenera* is misplaced...........................34

4. Implicit's argument that the Board failed to adequately explain its forfeiture and waiver determinations lacks merit ...35

D. The Board did not abuse its discretion in determining that judicial estoppel provides an alternative basis for affirmance........................37

1. Implicit's arguments against judicial estoppel lack merit ........39

V. Conclusion.................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Applied Materials, Inc.*,
   692 F.3d 1289 (Fed. Cir. 2012) ..........................................................................19

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
   941 F.3d 1320 (Fed. Cir. 2019) .........................................................................4, 6

*In re Bogese*,
   303 F.3d at 1367-68 ................................................................................27, 32, 33

*Bridgestone/Firestone Rsch., Inc. v. Auto. Club de L'Ouest de la France*,
   245 F.3d 1359 (Fed. Cir. 2001) ..........................................................................19

*Cooper v. Goldfarb*,
   154 F.3d 1321 (Fed. Cir. 1998) ............................................................................2

*Data General Corp. v. Johnson*,
   78 F.3d 1556 (Fed. Cir. 1996) .............................................................................38

*Davis v. Wakelee*,
   156 U.S. 680 (1895)...........................................................................................38

*Egenera, Inc. v. Cisco Systems, Inc.*,
   972 f.3d 1367 (Fed. Cir. 2020) ....................................................................*passim*

*Finnigan Corp. v. Int'l Trade Comm'n*,
   180 F.3d 1354 (Fed. Cir. 1999) ...........................................................................14

*Forshey v. Principi*,
   284 F.3d 1335 (Fed. Cir. 2002) (en banc) ......................................................25, 26

*In re Gartside*,
   203 F.3d 1305 (Fed. Cir. 2000) ...........................................................................18

*Genentech, Inc. v. Chiron Corp.*,
   220 F.3d 1345 (Fed. Cir. 2000) .............................................................................4

*In re Google Tech. Holdings LLC*,
   980 F.3d 858 (Fed. Cir. 2020) .....................................................................*passim*

*Hormel* v. *Helvering*,
312 U.S. 552 (1941)..................................................................................24

*Hyatt v. Hirshfeld*,
998 F.3d 1347 (2021).................................................................27, 32, 33

*Intelligent Bio-Sys., Inc. v. Illumina Cambridge, Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016) ...............................................................19

*Interactive Gift Exp., Inc. v. Compuserve Inc.*,
256 F.3d 1323 (Fed. Cir. 2001) ...............................................................14

*Key Pharmaceuticals v. Hercon Laboratories Corp.*,
161 F.3d 709 (Fed. Cir. 1998) .................................................................38

*In re Kotzab*,
217 F.3d 1365 (Fed. Cir. 2000) ...............................................................18

*Lending Tree v. Zillow, Inc.*,
54 F.Supp.3d 444 (W.D.N.C. 2014)........................................................25

*McCarthy* v. *Madigan*,
503 U.S. 140 (1992)..................................................................................24

*New Hampshire v. Maine*,
532 U.S. 742 (2001).............................................................................19, 38

*In re Nuvasive, Inc.*,
842 F.3d 1376 (Fed. Cir. 2016) ...................................................13, 23, 24

*Perry v. Blum*,
629 F.3d 1 (1st Cir. 2010)......................................................................12, 40

*Personalized Media Communications, LLC v. Apple Inc.*,
57 F.4th 1346 (2023) ...............................................................27, 32, 33

*SIPCO, LLC v. Emerson Electric Co.*,
ECF No. 73, Case No. 18-1364 (Fed. Cir. 2021) .............................20

*Symbol Technologies, Inc. v. Lemelson Medical*,
277 F.3d 1361 (2002)...............................................................27, 32, 33

iv

*Synopsys, Inc. v. Mentor Graphics Corp.*,
  814 F.3d 1309 (Fed. Cir. 2016) .................................................................35

*Timken U.S. Corp. v. United States*,
  421 F.3d 1350 (Fed. Cir. 2005) .................................................................36

*Transclean Corp. v. Jiffy Lube Intern., Inc.*,
  474 F.3d 1298 (Fed. Cir. 2007) .......................................12, 37, 38, 40

*United States v. Arthrex, Inc.*,
  594 U.S. 1 (2021) ..........................................................................................6

*Wang Lab., Inc. v. Applied Computer Sciences, Inc.*,
  958 F.2d 355 (Fed. Cir. 1992) .................................................................38

*Woodford v. Ngo*,
  548 U.S. 81 (2006).......................................................................................24

**Statutes**

35 U.S.C. § 102.............................................................................................19

35 U.S.C. § 102(e) ..........................................................................................3

35 U.S.C. § 102(f).........................................................................................19

35 U.S.C. § 103(a) ........................................................................................31

35 U.S.C. § 143 ...............................................................................................6

35 U.S.C. § 256....................................................................................*passim*

35 U.S.C. § 256(a) ..........................................................................................7

35 U.S.C. § 256(b) ........................................................................................34

35 U.S.C. § 316(a)(11)..................................................................................23

**Other Authorities**

37 C.F.R § 1.324(b) ...................................................................................7, 11

Board's Consolidated Trial Practice Guide
  https://www.uspto.gov/about-us/news-updates/consolidated-trial-
  practice-guide-november-2019 ...............................................................................13

Board's Trial Practice Guide
  https://www.uspto.gov/sites/default/files/documents/2018_Revised
  _Trial_Practice_Guide.pdf ......................................................................................22

MPEP § 1481.02 ........................................................................................7, 11

**STATEMENT OF RELATED CASES**

Beyond the cases identified in appellant's opening brief, the Director is not aware of any other appeal in connection with the patents at issue in this case that has previously been before this Court or any other related cases pending in this or any other court that will directly affect, or be directly affected by, this Court's decision in the pending appeal.

## I.   STATEMENT OF THE ISSUES

The IPRs at issue in this appeal were fully litigated on the uncontested understanding that the challenged patents had only two inventors. The Patent Trial and Appeal Board ultimately concluded that the challenged claims were unpatentable, based principally on a prior art reference known as Janevski. Years after the conclusion of the IPRs, the patent owner, appellant Implicit, LLC, availed itself of a statutory mechanism that allows patent owners to correct the inventorship of their patents, *see* 35 U.S.C. § 256, and added a third named inventor to the challenged patents. Implicit contends that as a result of this change in inventorship, it is entitled to an earlier priority date for its patents, one that antedates Janevski. Following a limited remand from this Court, Implicit argued to the Board that the final written decisions, even if correct when issued, should be set aside in light of this development. The Board rejected this contention, concluding that under the doctrines of forfeiture and waiver (which the Board discussed interchangeably) and judicial estoppel, Implicit, having never raised any issue of inventorship during the IPR proceedings, could not upend final written decisions issued in long completed IPRs based on its subsequent acquisition of certificates of correction to inventorship. The sole issue on appeal is whether the Board abused its discretion in declining to revisit its patentability determinations.

## II. STATEMENT OF THE CASE

### A. The IPR Proceedings

Implicit owns the '791 and '252 patents, both of which are titled "Method and System for Synchronization of Content Rendering." Appx158-174; Appx175-192. The '252 patent is a continuation of the '791 patent application. *Id*. Both patents are directed to rendering content at multiple rendering devices in a synchronized manner. *Id*. As both patents were filed prior to the America Invents Act, Implicit can attempt to swear behind a prior art reference's priority date in order to disqualify that reference as prior art. A patentee can swear behind a prior art reference if it can show (1) actual reduction to practice prior to the effective date of the prior art reference or (2) that it conceived of the inventions first and then, during the critical period, acted with reasonably continuous diligence to reduce the inventions to practice. *Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998).

In response to a 2017 complaint accusing it of infringement, Sonos filed petitions with the USPTO on March 9, 2018 challenging the patentability of certain claims of the '791 and '252 patents based, at least in part, on Janevski. *See* Appx197 (Certified List for IPR2018-00766 regarding the '791 patent); Appx201 (Certified List for IPR2018-00767 regarding the '252 patent); Appx301-381 (IPR2018-00766 petition covering the '791 patent); Appx4001-4078 (IPR2018-

00767 petition covering the '252 patent). The USPTO instituted both IPRs. *See* Appx436; Appx4129.

During the IPR proceedings, Implicit argued that Janevski does not constitute prior art to the challenged claims under pre-AIA 35 U.S.C. § 102(e) because the subject matter of the claims was conceived and actually reduced to practice by the only two individual who were then named inventors—Balassanian and Bradley—prior to Janevski's filing date of December 11, 2001. *See* Appx37-48 (Board's decision in the 766 IPR summarizing Patent Owner's contentions regarding antedating Janevski); Appx112-126 (Board's decision in the 767 IPR summarizing Patent Owner's contentions regarding antedating Janevski); Appx468-518 (Implicit's Patent Owner response in the 767 IPR); Appx4157-4206 (Implicit's Patent Owner response in the 767 IPR). To that end, Implicit specifically alleged that "Mr. Balassanian and Mr. Bradley conceived of the inventions set forth in the Challenged Claims and worked to reduce them to practice" before Janevski's filing date. Appx489; Appx4178.

In support of its efforts to swear behind Janevski, Implicit noted that Balassanian and Bradley communicated their inventions to internal engineering and development staff, and that they worked primarily with Guy Carpenter, an "Engineering Master . . . to implement the inventions of the Challenged Claims." Appx489; Appx4179. And Implicit pointed to certain work produced by Carpenter

3

as evidence that the invention was reduced to practice before Janevski's filing date. Appx46; Appx489-492; Appx3360. But in making this argument, Implicit proceeded solely on the theory that it was Balassanian and Bradley alone who had conceived of the invention and that Carpenter's work should be treated merely as inuring to the benefit of those two named inventors. *See generally Genentech, Inc. v. Chiron Corp.*, 220 F.3d 1345, 1353 (Fed. Cir. 2000) (describing the doctrine of inurement, under which the acts of another person may under certain circumstances be deemed to accrue to the benefit of the inventor). At no point during either IPR did Implicit argue that Guy Carpenter was himself properly considered a co-inventor of the challenged patents. *See* Appx395-416 (Implicit's preliminary response in the 766 IPR); Appx4092-4119 (Implicit's preliminary response in the 767 IPR); Appx468-518 (Implicit's response in the 766 IPR); Appx4157-4206 (Implicit's response in the 767 IPR); Appx634-663 (Implicit's sur-reply in the 766 IPR); Appx4317-4346 (Implicit's sur-reply in the 767 IPR); Appx1007-1082 (combined oral hearing transcript for the 766 IPR and 767 IPR).

### B. The Board's decisions: Implicit failed to carry its burden of proving conception of the invention prior to Janevski's filing date

On September 16, 2019 (before this Court's *Arthrex* decision), the Board issued a final written decision in each IPR that found all challenged claims unpatentable based on Janevski. Appx27-77; Appx104-157. In determining that Implicit failed to carry its burden to demonstrate conception of the invention prior

4

to Janevski's filing date in the 766 IPR, the Board found that Implicit provided no evidence "as to who conceived of the invention, when the conception occurred, whether there was a recognition of conception of the invention embodied in the claims of the '791 patent, whether the inventors communicated the invention to Mr. Carpenter, or whether Mr. Carpenter was working at the inventors' request to reduce the invention to practice—with the exception of the limited testimony of Mr. Balassanian." Appx47. The Board further found that Mr. Balassanian's testimony was "insufficient to carry [Implicit]'s burden of production to establish conception of the invention and the communication of the invention to Mr. Carpenter such that any actual reduction to practice could inure to the inventors' benefit." *Id*. Notably, the Board's decision in the 766 IPR did not determine the correct inventorship of the patents, but rather addressed the sufficiency of corroborating evidence of conception and communication of the invention in order for the then-named inventors to benefit from Mr. Carpenter's work. Appx37-48.

Likewise, in the 767 IPR, the Board found that, "[c]onsidering the record before us as a whole, we determine that Patent Owner fails to meet its burden of producing evidence sufficient to show conception by Mr. Balassanian and Mr. Bradley and, therefore, that Mr. Carpenter's actions inure to the benefit of the inventors." Appx125. As was the case in the 766 IPR, the Board's decision in the 767 IPR did not determine the correct inventorship of the patents, but rather

addressed the sufficiency of corroborating evidence of conception and communication of the invention in order for the then-named inventors to benefit from Mr. Carpenter's work. Appx112-126.

### C. Federal Circuit appeal and remand per *Arthrex* for the limited purpose of allowing Implicit an opportunity for Director review

On October 31, 2019—after the Board issued its final written decisions—this Court decided *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019). On November 8, 2019, Implicit appealed both Board decisions to this Court. Appx1083-1088; Appx4766-4771. Both notices of appeal raised (among other issues) an Appointments Clause challenge, prompting the Director to intervene. *Id.*; 35 U.S.C. § 143.

On June 21, 2021, the Supreme Court, in its review of this Court's *Arthrex* decision, held that PTAB judges' ability to render final decisions on patentability is incompatible with their status as inferior officers, and determined that the Director must have discretion to review final Board decisions in inter partes reviews. *United States v. Arthrex, Inc.*, 594 U.S. 1, 14-15, 25-26 (2021). Accordingly, on November 30, 2021, this Court remanded these cases "for the limited purpose of allowing appellant the opportunity to request Director rehearing of the final written decisions." ECF No. 70; Appx4; Appx81.

On December 30, 2021, Implicit filed requests for Director review in the 766 IPR and the 767 IPR, both of which the USPTO denied on February 7, 2022.

Appx1105-1122; Appx4788-4805; Appx1123-1125. Then, on March 7, 2022,

Implicit filed amended notices of appeal. Appx1126-1131; Appx4809-4814.

### D. Corrected inventorship: Implicit hires new counsel, corrects inventorship, and requests a remand for the Board to reconsider its decisions based on the corrected inventorship

Two weeks after the Court remanded these appeals for the limited purpose

of allowing Implicit the opportunity to request Director rehearing of the final

written decisions, on December 17, 2021, Implicit's new counsel filed pro forma

petitions with the USPTO for correction of inventorship of the '791 and '252

patents by adding Guy Carpenter as an inventor. *See* ECF No. 78, Exhibits. E-F;

*see also* 35 U.S.C. § 256(a) ("Whenever . . . through error an inventor is not named

in an issued patent, the Director may, on application of all the parties and

assignees, with proof of the facts and such other requirements as may be imposed,

issue a certificate correcting such error."). Under USPTO practice, such petitions

are processed on a ministerial basis and USPTO makes no effort to verify whether

an individual newly named as a co-inventor is properly considered an inventor as a

legal matter. *See Egenera, Inc. v. Cisco Systems, Inc.*, 972 F.3d 1367, 1380 (Fed.

Cir. 2020) (stating that the PTO examines a request to correct inventorship "only

for the presence of supporting statements and the required fee"); *see also* 37 C.F.R

§ 1.324(b); MPEP § 1481.02. Implicit's petitions to correct inventorship were filed

more than two years after the Board had issued its final written decisions on

September 16, 2019, and nearly three years after Implicit had filed its December 18, 2018 Patent Owner Responses in the 766 and 767 IPRs alleging that Mr. Balassanian and Mr. Bradley were the inventors that conceived of the inventions in the '791 and '252 patents and reduced them to practice. Appx27-77; Appx104-157; Appx468-518; Appx4157-4206.

On June 9, 2022, after it had filed its amended notices of appeal (ECF Nos. 73-74) upon the denial of its requests for Director review, Implicit moved this Court for another remand to await the USPTO issuing certificates of correction adding Guy Carpenter as an inventor and to have the Board reconsider its decisions in the 766 and 767 IPRs based on the corrected inventorship. ECF No. 78. On July 7, 2022, this Court stayed proceedings pending the outcome of the Implicit's petitions to correct inventorship. ECF No. 81. On August 22, 2022, the USPTO issued pro forma certificates of correction adding Guy Carpenter as an inventor for the '791 and '252 patents. Appx174; Appx192. On November 9, 2022, this Court remanded these appeals "for the sole purpose of having the PTAB issue an order addressing what, if any, impact the certificates of correction would have on the final written decisions in these cases." ECF No. 85.

**E. The Board's decision on remand: Implicit's corrected inventorship has no impact on the Board's decisions due to forfeiture, waiver, and judicial estoppel**

On September 19, 2023, the Board issued a decision on remand in both IPRs finding that Implicit's certificates of correction of inventorship have no impact on the Board's final written decisions holding the challenged claims unpatentable as anticipated by Janevski or obvious over Janevski, alone or in combination with other prior art. Appx1-26; Appx78-103. The Board reviewed how, during the IPR proceedings, Implicit had attempted (unsuccessfully) to antedate Janevski by arguing that the originally named inventors (Balassanian and Bradley) had conceived of the invention and communicated it to their engineering staff (including Guy Carpenter), who then reduced it to practice prior to Janevski's December 11, 2001 effective date. Appx3-4.

Turning to the merits of Implicit's submission, the Board first agreed with Implicit that certificates of correction of inventorship apply retroactively. Appx7-10. But the Board explained that both judicial estoppel and the related doctrines of waiver and forfeiture barred Implicit's belated attempt to upend the fully litigated IPRs through the injection of a novel argument.

**1. The Board finds that judicial estoppel precludes Implicit from relying on corrected inventorship to antedate Janevski**

The Board determined that judicial estoppel precludes Implicit from relying on the certificates of correction to antedate Janevski. Appx11-21. In particular, the

Board recognized that judicial estoppel applies against a party when the following three factors are met: (1) the party takes a later position that is "clearly inconsistent" with an earlier position; (2) the party succeeds in persuading a court to adopt the earlier position (which thus poses a "risk of inconsistent court determinations"); and (3) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. Appx11. The Board agreed with Petitioner that that all three factors were met here. Appx11-21.

With regard to the first factor, the Board found that, at trial during the IPR proceedings, Implicit explicitly asserted that Mr. Balassanian and Mr. Bradley conceived of the inventions of the patents and communicated those inventions to an internal engineering and development staff, including Mr. Carpenter, for implementation. Appx12-13. The Board observed that Implicit has now changed its position by seeking and obtaining a correction of inventorship to add Mr. Carpenter as an inventor. Appx13. The Board further rejected Implicit's assertion that the Board's decisions in 2019 justified Implicit's correction of inventorship, explaining that those Board decisions did not determine the correct inventorship of the '791 and '252 patents. *Id*. Rather, the decisions evaluated the sufficiency of corroborating evidence of conception and communication of the invention in order for the inventors to benefit from Mr. Carpenter's work. *Id*.

10

The Board was also unpersuaded by Implicit's reliance on *Egenera, Inc. v. Cisco Systems, Inc.*, 972 F.3d 1367 (Fed. Cir. 2020) because, in that case, the district court's intervening claim construction justified the change in inventorship. Appx14. The Board observed that there was no such intervening legal determination in this case that warranted setting aside judicial estoppel. Appx14. In contrast to the changed legal scope of the claims in *Egenera*, the Board observed that its 2019 Board decisions involved determinations concerning the sufficiency of corroborating evidence, which is a factual determination, based on the documentary evidence of record as argued by Implicit, and which was in the sole control of Implicit. *Id*. In addition, the Board found that the documentary evidence could be consistent with either of Implicit's inventorship positions (i.e., that Balassanian and Bradly were the inventors, or that Carpenter was also an inventor) and stated that it made no determination regarding the correct inventorship. Appx15. The Board also observed that Implicit sought the change of inventorship post-trial, and noted that the USPTO's review of a corrected inventorship request is ministerial and limited to identifying the presence of supporting statements and the required fee without considering whether the asserted inventorship is correct. Appx15-16 (citing *Egenera* at 1380; 37 C.F.R § 1.324(b); and MPEP § 1481.02).

With regard to the second factor—whether Implicit succeeded in persuading the Board to adopt an earlier position—the Board found that this factor was met

because Implicit had succeeded in persuading the Board to adopt Implicit's earlier position that Mr. Balassanian and Mr. Bradly were the inventors of the patents, and that they communicated the invention to internal staff, including Mr. Carpenter, to reduce the invention to practice. Appx17. In rejecting Implicit's argument that it was not successful in antedating Janevski, the Board observed that a party need not show that the earlier representation led to a favorable ruling on the merits, but instead must show that the court adopted and relied on the represented position either in a preliminary matter or as part of a final disposition. Appx18 (citing *Perry v. Blum*, 629 F.3d 1, 11 (1st Cir. 2010); *Transclean Corp. v. Jiffy Lube Intern., Inc.*, 474 F.3d 1298, 1307 (Fed. Cir. 2007)).

For the third factor—whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped—the Board found that this factor was met because revisiting these proceedings under changed inventorship would require the additional expenditure of resources by Petitioner after it had already spent resources litigating this matter to resolution. Appx18-19. Having found that the three factors for applying judicial estoppel were met, the Board determined that judicial estoppel precludes Implicit from relying on the corrected inventorship to antedate Janevski. Appx19-21.

## 2. The Board finds that Implicit forfeited and waived its right to rely on corrected inventorship to antedate Janevski

The Board also found that Implicit had forfeited and waived its right to rely on corrected inventorship to antedate Janevski. Appx21-25. The Board pointed out that its remand decision generally uses the term "waiver" because that is the terminology typically used in IPR proceedings, but made clear that: (1) forfeiture is the failure to make the timely assertion of a right; (2) waiver is the intentional relinquishment or abandonment of a known right; and (3) both the criteria of untimeliness and intentionality are met in this case and therefore waiver and forfeiture both apply to the circumstances of this case. Appx23, n.11 (citing *In re Google Tech. Holdings LLC*, 980 F.3d 858, 862 (Fed. Cir. 2020)).

The Board pointed out that, during the IPR proceeding, it put Implicit on notice that any arguments concerning patentability not raised in the patent owner response may be deemed waived. Appx23 (citing Scheduling Order at Appx463 ("Patent Owner is cautioned that any arguments for patentability not raised in the response may be deemed waived.")). The Board also cited to this Court's decision in *In re Nuvasive, Inc.*, 842 F.3d 1376, 1379-82 (Fed. Cir. 2016), holding that a Patent Owner waived an argument by not raising the argument in the Patent Owner Response. Appx23. The Board pointed out that such waiver is consistent with the Board's Consolidated Trial Practice Guide (available at https://www.uspto.gov/about-us/news-updates/consolidated-trial-practice-guide-

13

november-2019). Appx23. The Board further pointed out that such waiver is also consistent with this Court's precedent stating that "a party's argument should not be a moving target." Appx23 (citing *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1346 (Fed. Cir. 2001) (quoting *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1363 (Fed. Cir. 1999)).

The Board then explained that, during the IPR proceedings, Implicit had sole possession of the evidence relevant to inventorship and intentionally presented evidence asserting a certain inventorship based on Balassanian and Bradley, and that any evaluation justifying a change in inventorship now should have also justified such a change during trial when Petitioner had the opportunity to respond to Patent Owner's changed position. Appx23. The Board reiterated that its decisions in 2019 evaluated the sufficiency of the evidence on antedating and did not determine the correct inventorship. Appx23-24. Rather, the Board stated that "it was Patent Owner who opted later on an untimely basis to seek a change in inventorship and present it as the basis for revisiting determinations of the Final Written Decisions." Appx24. The Board further pointed out that "Patent Owner not only waited until after its Patent Owner Response and Sur-reply was filed, but waited until after the trial had already been complete, and an appeal was pending, to seek a certificate of correction." *Id*.

The Board found that this set of circumstances is more egregious than the typical set of circumstances under which waiver applies in *inter partes* proceedings. *Id*. Thus, the Board determined that "waiver applies, precluding Patent Owner from relying on the certificates of correction of inventorship in these proceedings." *Id*.

### 3. The Board determines that the Certificates of Correction have no impact on the Board's decisions due to judicial estoppel, forfeiture, and waiver

Because it found that judicial estoppel, forfeiture, and waiver preclude Implicit from relying on the certificates of correction, the Board determined that "the certificates of correction for inventorship have no impact on the Final Written Decisions in these cases." Appx25.

The Board further noted that if judicial estoppel, forfeiture, and waiver did not apply, (1) Petitioner should be permitted the opportunity to respond to Patent Owner's new inventorship; and (2) the Board would likely have to determine whether (as Implicit alleges) the source code evidence supports the actual reduction to practice prior to Janevski's effective date; and (3) the Board would likely have to resolve a claim construction dispute that may affect the determination of whether the source code practices the claimed invention. *Id*.

This Court granted a remand for the limited purpose of allowing the Board to assess what impact, "if any," the corrected inventorship would have on the Board's decisions. The Board properly applied forfeiture and waiver, in addition to judicial estoppel, to Implicit's belated attempt to undo completed IPRs through the untimely assertion of a new inventorship. In order to affirm the Board's decision, this Court need only find that the Board did not abuse its discretion in applying one of these equitable doctrines.

Here, the Board did not abuse its discretion in finding that Implicit failed to make a timely assertion of a right, and thus forfeited its right to rely on a corrected inventorship that includes Mr. Carpenter for three reasons. *First*, the Board's scheduling order and Trial Practice Guide both notified Implicit that arguments not timely raised risk forfeiture. *Second*, the Board's forfeiture finding is consistent with the statutory framework for IPR proceedings. *Third*, the Board's forfeiture finding is consistent with the precedent of this Court and the Supreme Court, as well as a district court.

Implicit's arguments against forfeiture and waiver, and the application of equitable doctrines more broadly, are unconvincing for four reasons. *First*, Implicit's argument that forfeiture is inapplicable because it timely corrected inventorship under 35 U.S.C. § 256 is unpersuasive because the Board's bases for

finding the claims unpatentable were anticipation and obviousness—not incorrect inventorship. Indeed, the Board expressly stated that it has *never* determined the correct inventorship for Implicit's patents. Thus, the Board did nothing that required Implicit to correct inventorship and the change of inventorship does not directly impact the Board's unpatentability determination. *Second*, Implicit's argument that equitable doctrines like forfeiture are inapplicable because it complied with the pertinent statute for correcting inventorship lacks merit because this Court has consistently held that compliance with pertinent rules and statutes does not preclude the application of equitable doctrines. *Third*, Implicit's reliance on this Court's *Egenera* decision is misplaced because *Egenera* involved potential invalidation due to a failure to name the proper inventors, whereas this case did not involve potential invalidation due to a dispute about inventorship, but rather an evidentiary gap in Implicit's proof of conception and reduction to practice. Moreover, unlike here, in *Egenera*, the district court's claim construction changed the scope of the claims, which directly impacted inventorship and required Egenera to correct inventorship. *Fourth*, the Board adequately explained its forfeiture determination in a manner sufficient to comply with the requirements of the APA.

The Board also did not abuse its discretion in rejecting Implicit's new inventorship argument pursuant to the equitable doctrine of judicial estoppel. Judicial estoppel applies when: (1) a party's later position is "clearly inconsistent"

17

with its earlier position; (2) the party succeeded in persuading a court to adopt the earlier position, thereby posing a risk of inconsistent court determinations; and (3) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. Here, those three factors are met because Implicit first asserted that Mr. Balassanian and Mr. Bradley were inventors and communicated the invention to Mr. Carpenter for his subsequent reduction to practice, the Board accepted that premise for the purposes of making findings of fact and rulings of law, and then two years after the Board ruled against it, Implicit sought to derive the unfair advantage of getting a do-over by revisiting the Board's decisions based on a new, inconsistent theory of inventorship. Thus, the Board did not abuse its discretion in finding that judicial estoppel applies and this Court may affirm the Board's decision on that basis.

## IV. ARGUMENT

### A. Standard of Review

This Court reviews the PTAB's factual determinations for substantial evidence and its legal determinations de novo. *See In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). "Substantial evidence is something less than the weight of the evidence but more than a mere scintilla of evidence." *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000) (citation omitted). It is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *In re Applied Materials, Inc.*, 692 F.3d 1289, 1294 (Fed. Cir. 2012).

This Court reviews equitable defenses, such as forfeiture, waiver, and judicial estoppel, and decisions related to compliance with the Board's procedures for an abuse of discretion. *Bridgestone/Firestone Rsch., Inc. v. Auto. Club de L'Ouest de la France*, 245 F.3d 1359, 1361 (Fed. Cir. 2001); *Intelligent Bio-Sys., Inc. v. Illumina Cambridge, Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016); *see also New Hampshire v. Maine*, 532 U.S. 742, 750 (2001); *Egenera*, 972 F.3d at 1378.

"An abuse of discretion is found if the decision: (1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact finding; or (4) involves a record that contains no evidence on which the Board could rationally base its decision." *Intelligent Bio-Sys.*, 821 F.3d at 1367.

### B. The Board did not abuse its discretion in finding that Implicit forfeited its right to rely on a corrected inventorship that includes Guy Carpenter

The Board properly applied forfeiture to Implicit's attempt to unwind the Board's final unpatentability decisions based on a new, untimely argument after its post-decision correction of inventorship.[1] During the IPR trial proceedings,

---

[1] There is no dispute that 35 U.S.C. § 256 applies retroactively in general and to more than just § 102(f) inventorship claims, but also to § 102 claims in which inventorship is an issue. *See* Appx10-11; *see also* Brief for the United States as

Implicit never argued that Guy Carpenter was an inventor in its attempt to antedate Janevski. *See* Appx6; Appx395-416 (Patent Owner Preliminary Response); Appx468-518 (Patent Owner Response). In fact, Implicit argued the opposite—that Guy Carpenter was not an inventor and was simply part of the engineering staff that the inventors used to reduce the invention to practice. *Id.* Moreover, the Board's decisions never determined whether or not Guy Carpenter was an inventor, or inventorship, at all. Appx4-7, Appx12-13; Appx43-48. Rather, as the Board stated, "the issue addressed in the Final Written Decisions was not the correct inventorship of the patents, but rather the *sufficiency* of corroborating evidence of conception and communication of the invention in order for the inventors to benefit from Mr. Carpenter's work." Appx13.

Having lost at the Board by failing to provide sufficient evidence to antedate Janevski, Implicit attempted to get a do-over on antedating Janevski by raising a new argument—that Guy Carpenter is an inventor—for the first time *two years*

---

Amicus Curiae in *SIPCO, LLC v. Emerson Electric Co.*, ECF No. 73, Case No. 18-1364 (Fed. Cir. 2021) (explaining how "Section 256, by using different language than that appearing in sections 254 and 255, provides retroactive effect to corrections of inventorship."). As such, the Director's brief does not address Implicit's argument regarding the retroactivity of § 256. Br. at 23-27. The relevant question is not whether the changed inventorship is retroactive—it was—but rather whether Implicit's belated assertion of a legal theory tied to the changed inventorship can properly be raised long after the Board's final written decision has issued.

*after* the Board issued its decisions. Appx7; Appx174; Appx192. The Board did

not abuse its discretion in finding that Implicit forfeited[2] this argument by not

timely raising it. Appx21-24. Moreover, the Board did not abuse its discretion in

applying forfeiture for arguments not included in Implicit's Patent Owner

Response as set forth in the Board's scheduling order and Trial Practice Guide,

which is consistent with the precedent of this Court, the Supreme Court, and a

district court.

>   **1. The Board's scheduling order and Trial Practice Guide both notified Implicit that arguments not timely raised risk forfeiture**

The Board properly applied its scheduling order and Trial Practice Guide,

both of which state that arguments not presented in the patent owner's response are

---

[2] The Board also did not abuse its discretion in finding that waiver applies. The Board correctly acknowledged that although "waiver" and "forfeiture" are commonly used interchangeably, waiver is different than forfeiture. Appx23 (citing *Google*, 980 F.3d at 862). In particular, "[w]hereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'"). *Id*. Here, in addition to finding forfeiture applicable, the Board correctly found that during the IPR proceedings Implicit intentionally presented evidence to antedate Janevski based on inventorship consisting of Balassanian and Bradley, but not Carpenter. Appx23-24. As Implicit was in possession of all pertinent evidence concerning inventorship and the Board has never determined the correct inventorship or construed the claims in a way that would change inventorship as was the case in *Egenera*, Implicit's intentional decision to omit Carpenter as an inventor in its attempt to antedate Janevski waived its rights to do so later. Appx13-15

21

forfeited.[3] Here, on September 19, 2018, at the beginning of the IPR proceedings and before Implicit filed its Patent Owner responses on December 18, 2018, the Board issued a scheduling order that put the parties on notice that any arguments concerning patentability not raised in the patent owner response may be deemed waived. Appx459-467 at Appx463; Appx468-518; Appx4157-4206. In particular, the Board stated that "Patent Owner is cautioned that any arguments for patentability not raised in the response may be deemed waived." Appx463.

The August 2018 update to the Board's Trial Practice Guide (available at https://www.uspto.gov/sites/default/files/documents/2018_Revised_Trial_Practice_Guide.pdf) provided Implicit with additional notice that arguments not timely raised risked forfeiture. More specifically, page 27 of the August 2018 update to the Trial Practice Guide states that "Patent Owner is cautioned that any arguments for patentability not raised in the response may be deemed waived." *Id*.

Accordingly, Implicit had ample notice before it filed its Patent Owner responses that it risked forfeiting arguments not timely raised in these responses.

---

[3] As the Board acknowledged in it remand decision, the Board typically uses the term "waiver" when it is discussing "forfeiture." Thus, the Board's scheduling order and Trial Practice Guide both refer to "waiver" when referring to what this Court has clarified is forfeiture. *See Google*, 980 F.3d at 862 (noting that "waiver" and "forfeiture" are commonly used interchangeably).

22

### 2. The Board's timeliness requirement at the risk of forfeiture is also consistent with the statutory framework

The Board's requirement that parties timely raise arguments in inter partes review proceedings at the risk of forfeiture is further supported by the statutory framework of IPR proceedings that requires the Board "to prescribe regulations . . . requiring that the final determination in an inter partes review be issued not later than 1 year after the date on which the Director notices the institution of a review under this chapter, except that the Director may, for good cause shown, extend the 1-year period by not more than 6 months, and may adjust the time periods in this paragraph in the case of joinder under section 315(c)." 35 U.S.C. § 316(a)(11). The Board's forfeiture rule is consistent with this statutory requirement.

On the other hand, Implicit's argument that it can unwind and essentially restart an IPR proceeding by raising an untimely *argument* in support of a claimed priority date at any time would frustrate the Board's ability to comply with its statutory obligation to issue a final decision within one year of institution. 35 U.S.C. § 316(a)(11).

### 3. The Board's forfeiture determination is consistent with the precedent of this Court, the Supreme Court, and a district court

This Court has held that arguments not timely raised in a patent owner response in an IPR proceeding are forfeited. *In re Nuvasive, Inc.*, 842 F.3d 1376,

1379-82 (Fed. Cir. 2016). *In re Nuvasive* is particularly relevant here because it involved an inter partes review proceeding where the Board put the patent owner on notice that arguments not raised in the patent response will be deemed waived. *In re Nuvasive*, 842 F.3d at 1380-81. This Court observed that the patent owner failed to include an argument concerning public accessibility of the prior art in its patent owner response. *Id*. As a result, this Court stated that "we do not have the benefit of the PTAB's informed judgment on the public accessibility issue" and held that the patent owner waived the public accessibility argument by not raising it in the patent owner response. *Id*. The same logic applies here.

This equitable principle of forfeiture is also consistent with the Supreme Court's general rule that a party must raise arguments before an agency in a timely manner according to the agency's practice. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Indeed, "[a]s a general rule courts should not topple over administrative decisions unless the administrative body not only has erred, *but has erred against objection made at the time appropriate under its practice*." *Woodford*, 548 U.S. at 90 (emphasis in original; citations omitted); *see McCarthy* v. *Madigan*, 503 U.S. 140, 144-145 (1992); *Hormel* v. *Helvering*, 312 U.S. 552, 556-557 (1941). That general rule serves important public purposes, including discouraging "sandbagging" (which is particularly relevant here). *Google*, 980 F.3d at 864. As this Court explained in *Google*, "we are, as an appellate court, charged in this

instance with *reviewing* the Board's conclusions." *Id*. "The very word 'review' presupposes that a litigant's arguments have been raised and considered in the tribunal of first instance." *Id*. (internal quotations omitted). "To abandon that principle is to encourage the practice of 'sandbagging': suggesting or permitting, for strategic reasons, that the [lower tribunal] pursue a certain course, and later—if the outcome is unfavorable—claiming that the course followed was reversible error." *Id*.

A district court has also found that a correction of inventorship cannot be raised at a subsequent hearing where it was not argued at an initial hearing. *Lending Tree v. Zillow, Inc.*, 54 F.Supp.3d 444 (W.D.N.C. 2014). In *Lending Tree*, the court declined to set aside a jury's verdict as invalid for incorrect inventorship, noting that the patentee failed to raise it during trial. *Id*. The court found that "more than sufficient evidence supports the jury's verdict on improper inventorship, including the evidence directly related to Mr. Bennett's participation in developing the patented process." *Id*. at 451. Thus, the court determined that the evidence regarding inventorship had already been considered and decided by the jury. *Id*. at 452.

To be sure, there are rare circumstances that might constitute an exception to the forfeiture rule. *See Forshey v. Principi*, 284 F.3d 1335, 1355-58 (Fed. Cir. 2002) (en banc). In particular, those exceptions include: (1) when a new statute

altering substance or procedure has been enacted after consideration of the case by the lower court; (2) when there is a change in the jurisprudence of the reviewing court or the Supreme Court after consideration of the case by the lower court; (3) when appellate courts may apply the correct law even if the parties did not argue it below and the court below did not decide it, but only if an issue is properly before the court; and (4) when a party appeared pro se before the lower court, a court of appeals may appropriately be less stringent in requiring that the issue have been raised explicitly below. *Id*. This Court made clear that falling within one of these exception "does not, of course, mean that future panels must in each case consider issues not decided or raised below if the case falls within the scope of one of the exceptions." *Id*. at 1358. This Court held only that "in future cases, we may consider such issues where it is appropriate to do so under all the circumstances." *Id*.

None of those exceptions apply here: a counseled party chose to press a particular theory during litigation before the Board and now regrets that it elected not to offer an alternative theory. Nor has Implicit identified anything "exceptional" about this case or any "particular circumstances" that would warrant excusing its failure to raise its alternative inventorship argument before the Board. Implicit simply failed to raise this new inventorship argument in a timely manner

before the Board, and instead waited until two years after the Board ruled against it to do so.

### C. Implicit's arguments against forfeiture are unconvincing

Implicit raises four arguments against forfeiture and/or waiver[4], each of which lacks merit as explained below.

### 1. Implicit's assertion that forfeiture is inapplicable because it was in no way untimely in asserting Mr. Carpenter's inventorship rights under § 256 is unpersuasive

Implicit's opening brief asserts that forfeiture does not apply because it "was in no way 'untimely' in its assertion of Mr. Carpenter's rights under § 256." Br. at

---

[4] Implicit argues that waiver does not apply largely for the same reasons that it argues forfeiture does not apply. Br. at 37-47. Thus, Implicit's arguments against waiver are unconvincing for largely the same reasons that its arguments against forfeiture are unconvincing. For example, Implicit argues that failure to include an inventorship correction in a Patent Owner Response does not constitute waiver. Br. at 42. But the Board did not rely on that as a basis for finding waiver. Rather, the Board stated that, "[d]uring the *inter partes* proceedings, Patent Owner had in its sole possession the evidence of inventorship and intentionally presented evidence asserting a certain inventorship." Appx23. Thus, it is sufficiently clear from the Board's decision that waiver was based on Implicit intentionally presenting evidence of a certain inventorship (Balassanian and Bradley) to antedate Janevski, but not presenting evidence that Carpenter was also an inventor. Implicit's other arguments against waiver, i.e., that the Board's decision required Implicit to correct inventorship and that § 256 does not have a timeliness requirement (Br. at 43), are also unconvincing for the same reasons discussed with regard to forfeiture. Namely, the Board's decision did not determine the correct inventorship (Appx13-15) and compliance with a statute does not bar the applicability of equitable doctrines. *See, e.g.*, *Hyatt*, 998 F.3d at 1366; *Personalized Media Communications,* 57 F.4th at 1354; *In re Bogese*, 303 F.3d at 1367-68; *Symbol Techs.*, 277 F.3d at 1368.

38. Of course, the relevant inquiry is not whether Carpenter timely asserted his rights as an inventor (he did), but rather, whether Implicit timely raised arguments in support of its preferred priority date that were predicated on Carpenter's status as an inventor (which it did not).

Implicit raises two arguments to support its assertion of timeliness, both of which fail.

*First*, Implicit argues that "§ 256 on its face '*does not limit the time* during which inventorship can be corrected.'" Br. at 38 (emphasis in original). But whether or not Implicit timely corrected inventorship in accordance with 35 U.S.C. § 256 is irrelevant because 1) the USPTO granted Implicit's petitions to correct inventorship, and 2) the Board's decision did not find the claims unpatentable based on an incorrect inventorship (that could be corrected), but assessed Implicit's evidence of conception and reduction to practice for the inventorship argument that Implicit made in its Patent Owner Response. *See* Appx3-4, Appx13, Appx15 ("We made no such determination, however, specifically regarding inventorship in our Final Written Decisions, nor do we make such a determination now.").

*Second*, Implicit argues that there is no forfeiture because "Implicit sought correction of its patents *after* the Final Written Decisions in view of various Board statements and fact findings, while the proceedings were ongoing." Br. at 39 (emphasis in original). Implicit suggests that something the Board decided required

it to correct inventorship. Br. at 39-41. But again, the Board did not determine inventorship in either of its 2019 Board decisions, nor did it determine inventorship in its remand decision. *See* Appx15. Thus, as the Board correctly found, "[i]f Patent Owner's evaluation of its own evidence now justifies a change in inventorship, that evaluation should have also justified such a change during trial when Petitioner had the opportunity to respond to Patent Owner's changed position." Appx23.

Moreover, the Board's remand decision is consistent with this Court's remand order that contemplated that the certificate of corrections might have no effect on the Board's decisions. *See* ECF No. 85 (remanding these appeals "for the sole purpose of having the PTAB issue an order addressing what, *if any*, impact the certificates of correction would have on the final written decisions in these cases.") (emphasis added).

At bottom, in its Patent Owner Response, Implicit was free to argue alternative inventorships in attempting to antedate the prior art. Section 256 ensures that if the Board agreed with a different inventorship than listed on the patents, then under § 256 that incorrect inventorship would not invalidate the patents. Section 256 does not, however, allow Implicit to choose one inventorship theory to litigate and then, after losing in a final written decision, pick a different theory without forfeiture applying. Indeed, under Implicit's reading, § 256 would

allow it to assert Guy Carpenter as a co-inventor on remand, but if its evidence again fails to establish conception and reduction to practice based on Guy Carpenter's work, it is free to unwind another final decision and try again with yet another inventorship theory (perhaps with a different member of the engineering staff) after yet another certificate of correction. Section 256 is a safeguard against invalidation based on an incorrect inventorship, but its safeguard does not void common law principles of forfeiture or authorize endless litigation.

> **2. Implicit's argument that equitable doctrines such as forfeiture, waiver, and judicial estoppel are inapplicable because it complied with the pertinent statute for correcting inventorship lacks merit**

Implicit asserts that equitable doctrines such as forfeiture, waiver, and judicial estoppel are inapplicable because it complied with the pertinent statute for correcting inventorship. Br. at 45-47. This argument is a red herring. Implicit was allowed to correct inventorship and no equitable doctrine was invoked to prevent it from doing so. Those doctrines were applied only to limit the grounds on which Implicit can attack the Board's final written decisions—contexts where those doctrines have long been held to apply.

This argument also fails for two additional reasons.

*First*, the Board did not find, as Implicit's opening brief asserts, that Implicit's error in inventorship invalidated the '791 and '252 patents. Br. at 45 ("[A]n error in inventorship '*shall not* invalidate the patent' when, as here, the

error is corrected."). Again, as stated above, the Board did not determine

inventorship in either of its 2019 Board decisions, nor did it do so in its remand

decision. Appx13. As the Board stated in its remand decision, "the issue addressed

in the Final Written Decisions was not the correct inventorship of the patents, but

rather the *sufficiency* of corroborating evidence of conception and communication

of the invention in order for the inventors to benefit from Mr. Carpenter's work."

Appx13. The Board further explained in its remand decision that "[w]e made no

such determination, however, specifically regarding inventorship in our Final

Written Decisions, nor do we make such a determination now." Appx15. As the

Board clearly did not determine inventorship, it cannot be the case that Implicit's

error in inventorship invalidated the '791 and '252 patents. Indeed, as the Board

found, Implicit's claims were found unpatentable based on the prior art. *See*

Appx74 ("For the reasons discussed above, Petitioner has shown by a

preponderance of the evidence that claims 1–3, 6–9, and 12 of the '791 patent are

unpatentable as obvious over Janevski alone and obvious over the combination of

Janevski and Schneidewend."); Appx156 ("For the foregoing reasons, we conclude

Petitioner has demonstrated by a preponderance of the evidence that claims 1–3, 8,

11, and 17 of the '252 Patent are unpatentable under 35 U.S.C. § 103(a) over

Janevski in combination with Azevedo, Mills, Berthaud, or Eidson").

*Second*, Implicit's argument that equitable doctrines are inapplicable when a patent owner complies with pertinent statutes and rules lacks merit because this Court has consistently held that equitable forfeiture doctrines apply even when a patentee has complied with all pertinent statutes and USPTO rules. *See, e.g.*, *Hyatt v. Hirshfeld*, 998 F.3d 1347, 1366 (2021); *Personalized Media Communications, LLC v. Apple Inc.*, 57 F.4th 1346, 1354 (2023); *In re Bogese*, 303 F.3d, 1362, 1367-68 (Fed. Cir. 2002); *Symbol Technologies, Inc. v. Lemelson Medical*, 277 F.3d 1361, 1368 (2002).

*Hyatt* involved patent applications that were filed prior to 1995 when a patent's term was measured as 17 years from the date of issuance. *Hyatt*, 998 F.3d at 1351. This meant that the patent applications could theoretically remain pending indefinitely through use of the continuation procedure of refiling. The patent applicant argued that his patent applications were not subject to forfeiture based on his delay in prosecuting them because he had complied with all pertinent statutes and USPTO rules. *Id*. This Court disagreed, stating that "[i]t is not the case that an applicant may prosecute his patents however he or she wishes within the statute and PTO regulation, because the doctrine of prosecution laches places an additional, equitable restriction on patent prosecution conduct beyond those imposed by statute or PTO regulation." *Id.* at 1366. Thus, "[a]n applicant must therefore not only comply with the statutory requirements and PTO regulations but

must also prosecute its applications in an equitable way that avoids unreasonable, unexplained delay that prejudices others." *Id*.

In *In re Bogese*, the patent applicant traversed a forfeiture rejection, urging that "it cannot be the law that one who has complied with clear statutory authority in all respects has somehow forfeited his right to a patent." *Id*. at 1365. This Court rejected that argument, finding that forfeiture can apply even though the patent applicant complied with pertinent statutes and rules and holding that "the PTO did not err in rejecting Bogese's claims because Bogese forfeited his right to a patent." *Id*. at 1367, 1369.

Similarly, in *Symbol Technologies*, this Court held that the equitable doctrine of laches may be applied to bar enforcement of a patent that issued after unreasonable and unexplained delay in prosecution, even though the patent applicant complied with pertinent statutes and rules. 277 F.3d at 1368.

More recently, in *Personalized Media Communications*, the patent owner argued that its compliance with applicable USPTO's rules in pursuing its patents precludes a finding of forfeiture as a matter of law. 57 F.4th at 1354. In rejecting that argument, this Court again reiterated that "[a]n applicant must . . . not only comply with the statutory requirements and PTO regulations but must also prosecute its applications in an equitable way." *Id*. (citing *Hyatt*, 998 F.3d at 1366).

### 3. Implicit's reliance on *Egenera* is misplaced

Implicit relies heavily on this Court's decision in *Egenera, Inc. v. Cisco Systems, Inc.*, 972 F.3d 1367 (Fed. Cir. 2020), citing to it on nearly every page of the argument section of its opening brief. *See* Br. at 19, 21, 22, 25, 27, 28, 29, 30, 31, 33, 34, 35, 36, 39, 40, 41, 44, 45, 46, 47. But *Egenera* is easily distinguishable and has little relevance to the facts of this case. In particular, *Egenera* involved potential invalidation due to a failure to name the proper inventors, precisely the scenario that § 256(b) addresses. *Egenera*, 972 F.3d at 1369-70. Here, by contrast, the Board did not resolve a dispute about inventorship—it simply considered whether the evidence (which was in Implicit's control) sufficed to establish a priority date earlier than Janevski. Appx13-15.

Moreover, in *Egenera*, the district court's claim construction changed the scope of the claims, which directly impacted inventorship and required Egenera to correct inventorship. *Id*. at 1377-78. Here, on the other hand, the Board did not determine the correct inventorship. Appx13-15. Thus, the Board's decision did not impact inventorship or require Implicit to correct inventorship. Instead, the Board found that Implicit simply failed to prove that Mr. Carpenter was working at the direction of the named inventors. Rather than patch that evidentiary hole in the

record at trial,[5] Implicit now attempts to moot that finding by adding him as an inventor.

Furthermore, in *Egenera*, the patent owner timely moved to correct inventorship after the district court decided the claim construction issue, but during the district court proceeding at a time when the opposing party would have the opportunity to address the new inventorship position had the court adopted it. *Egenera*, 972 F.3d at 1371-72.

For all of these reasons, *Egenera* is easily distinguishable and has little applicability here.

### 4. Implicit's argument that the Board failed to adequately explain its forfeiture and waiver determinations lacks merit

Implicit argues that the Board's entire argument concerning forfeiture and waiver in it remand decision lacks the reasonable clarity required for review under the Administrative Procedure Act. Br. at 38. This argument lacks merit. This Court has stated that, to comply with APA, the Board "only need explain itself sufficiently to allow effective judicial review." *Synopsys, Inc. v. Mentor Graphics*

---

[5] Ironically, a simple declaration from Mr. Carpenter may have been sufficient. Rather than proffer his declaration, however, it appears that Implicit attempted to shield him from discovery during the proceeding. After Mr. Carpenter's name surfaced in the proceeding, Sonos's counsel reached out to him, but was quickly rebuffed by Implicit's counsel, alleging that it "represents Guy Carpenter in connection with this matter." Appx2378 (Ex. 1021).

*Corp.*, 814 F.3d 1309, 1322 (Fed. Cir. 2016); *see also Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1355 (Fed. Cir. 2005) ("[A]n agency must explain its action with sufficient clarity to permit 'effective judicial review.'").

Here, the Board's post-remand decision provides sufficient clarity concerning its application of forfeiture and waiver to permit judicial review because it explained the distinction between forfeiture and waiver articulated by this Court in *In re Google Tech. Holdings LLC*, 980 F.3d 858, 862 (Fed. Cir. 2020), and determined that both forfeiture and waiver apply to the facts of this case. Appx22-23. In particular, the Board stated that "Google notes that, although 'waiver' and 'forfeiture' are commonly used interchangeably, waiver is different than forfeiture." Appx23, n.11 (citing *Google*, 980 F.3d at 862). The Board further explained that "[w]hereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *Id*. The Board then stated, "[h]ere, as above, both the criteria of untimeliness and intentionality are met, and therefore both waiver and forfeiture apply." *Id*. The Board further clarified that "[w]e use the term waiver herein, as that is the terminology typically used in IPR proceedings." *Id*.

As for intentionality, the Board explained that "[d]uring the *inter partes* proceedings, Patent Owner had in its sole possession the evidence of inventorship and *intentionally* presented evidence asserting a certain inventorship." Appx23

(emphasis added). The Board explained Implicit's untimeliness in the subsequent two sentences: "That evidence remained unchanged during the course of the trial." *Id*. "If Patent Owner's evaluation of its own evidence now justifies a change in inventorship, that evaluation should have also justified such a change during trial when Petitioner had the opportunity to respond to Patent Owner's changed position." *Id*.

Moreover, it is apparent from Implicit's opening brief that it reasonably understood the basis for the Board's forfeiture and waiver determinations and has had a full and fair opportunity to contest both of those determinations as it devoted nine pages of its briefing to addressing those issues. Br. at 38-47. Thus, the Board provided sufficient clarity concerning its application of forfeiture and waiver to comply with the APA and permit judicial review.

### D. The Board did not abuse its discretion in determining that judicial estoppel provides an alternative basis for affirmance

For similar reasons, the Board did not err in determining that the equitable doctrine of judicial estoppel also applies. Judicial estoppel is applicable when: (1) a party's later position is "clearly inconsistent" with its earlier position; (2) the party succeeded in persuading a court to adopt the earlier position, thereby posing a "risk of inconsistent court determinations"; and (3) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Transclean Corp. v. Jiffy Lube*

*Intern., Inc.,* 474 F.3d 1298, 1307 (Fed. Cir. 2007) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)).

The doctrine of judicial estoppel prohibits a party from taking inconsistent positions in the same or related litigation. *Transclean Corp. v. Jiffy Lube Intern., Inc.,* 474 F.3d 1298, 1307 (Fed. Cir. 2007). The doctrine's underlying purpose is to "protect the integrity of the judicial process." *Id.*; *see also Data General Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996) (citing *Davis v. Wakelee,* 156 U.S. 680, 689 (1895)); *Wang Lab., Inc. v. Applied Computer Sciences, Inc.,* 958 F.2d 355, 358 (Fed. Cir. 1992). The decision whether to invoke judicial estoppel lies within the court's discretion and is reviewed under the "abuse of discretion" standard. *Data General*, 78 F.3d at 1565. As this Court has noted, "the doctrine of judicial estoppel has been applied broadly to prevent a party from adopting inconsistent legal positions in the same or related judicial proceedings." *Key Pharmaceuticals v. Hercon Laboratories Corp.*, 161 F.3d 709, 715 (Fed. Cir. 1998).

Here, the Board correctly determined that each of the three factors for applying judicial estoppel were met. Appx11-21. In particular, the Board found that Implicit first asserted that Mr. Balassanian and Mr. Bradley were inventors and communicated the invention to Carpenter for his subsequent reduction to practice, the Board accepted the premise for the purposes of making findings of

fact and rulings of law, and then two years after the Board ruled against Implicit, Implicit sought to derive the unfair advantage of revisiting the Board's decisions based on a new, inconsistent theory of inventorship. *Id*.

### 1. Implicit's arguments against judicial estoppel lack merit

For the same reasons discussed above with respect to forfeiture, Implicit's heavy reliance on *Egenera* in contesting the Board's judicial estoppel determination is misplaced. *See supra* Section IV.C.3.

Implicit's argument that judicial estoppel does not apply because its earlier inventorship assertion based on Balassanian and Bradly was a "mistake" that it corrected after learning of "the Board's later inurement insights" (Br. at 30) is unconvincing because the Board just assessed the evidence as not proving inurement, and never determined inventorship. Appx13-15. And even if inventorship were somewhat complicated as Implicit alleges (Br. at 31), there is no reason that Implicit could not have argued an alternative theory of inventorship that included Mr. Carpenter during the IPR proceedings.

Implicit also argues that judicial estoppel does not apply because it was unsuccessful in persuading the Board that it could antedate Janevski. Br. at 31-33. However, "a party need not show that the earlier representation led to a favorable ruling on the merits . . . but must show that the court adopted and relied on the represented position either in a preliminary matter or as part of a final disposition."

*Perry v. Blum*, 629 F.3d 1, 11 (1st Cir. 2010); *see also Transclean Corp. v. Jiffy Lube Intern., Inc.*, 474 F.3d 1298, 1307 (Fed. Cir. 2007). Here, the Board relied on Implicit's earlier representation that Mr. Balassanian and Mr. Bradley were the two inventors in reaching its decisions that Implicit failed to antedate Janevski. Thus, Implicit was successful in persuading the Board on its asserted inventorship position.

Finally, Implicit's argument that it would gain no unfair advantage by being permitted to rely on its changed inventorship theory is unpersuasive because, as the Board found, it would give Implicit a "do-over." Appx21. This would require additional briefing by the parties as well as determining whether the source code evidence, in view of the related testimonial evidence and argument that is already in the trial record, supports the actual reduction to practice prior to Janevski's effective date, as Patent Owner argues it does. Appx25. As the Board found, this determination would likely entail resolving a claim construction dispute between the parties that may affect the determination of whether the source code practices the claimed invention. *Id*. Petitioner, after prevailing on the arguments Implicit presented in its Patent Owner Response, should not be forced to respond to different inventorship arguments now.

## V. CONCLUSION

For the foregoing reasons, the Court should affirm the Board's decision that

the certificates of correction have no impact on the Board's unpatentability

decisions due to forfeiture, waiver, and/or judicial estoppel.

Respectfully submitted,

July 5, 2024

/s/ Robert E. McBride_____
FARHEENA Y. RASHEED
Solicitor

AMY J. NELSON
Senior Counsel for Patent Policy and
Litigation

PETER J. AYERS
Senior Counsel for Patent Law and
Litigation

ROBERT E. MCBRIDE
SARAH E. CRAVEN
Associate Solicitors

Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313

*Attorneys for the Director of the*
*United States Patent and*
*Trademark Office*

# CERTIFICATE OF COMPLIANCE

I certify pursuant to Federal Rule of Appellate Procedure 32(a)(7) that the foregoing BRIEF FOR INTERVENOR—DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE complies with the type-volume limitation. The total number of words in the foregoing brief, excluding the table of contents and table of authorities, is 9,570 as measured by the word-processing software used to prepare this brief.

Dated:  July 5, 2024                    Respectfully,

*/s/ Robert E. McBride*
ROBERT E. MCBRIDE
Associate Solicitor
United States Patent and Trademark
Office

# CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2024, I electronically filed the foregoing BRIEF FOR INTERVENOR—DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE with the Court's CM/ECF filing system, which constitutes service, pursuant to Fed. R. App. P. 25(c)(2) and Fed. Cir. R. 25(e).

*/s/ Robert E. McBride*
ROBERT E. MCBRIDE
Associate Solicitor
United States Patent & Trademark Office
Mail Stop 8
P.O. Box 1450
Alexandria, Virginia 22313-1450