# United States Court of Appeals
# for the Federal Circuit

**IMPLICIT, LLC,**
*Appellant*

v.

**SONOS, INC.,**
*Appellee*

**KATHERINE K. VIDAL,**
**Undersecretary of Commerce for Intellectual Property and**
**Director of the United States Patent and Trademark Office,**
*Intervenor*

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in Proceeding Nos.
IPR2018-00766 and IPR2018-00767, Administrative Patent Judges
Nabeel U. Khan, Sheila F. McShane, Michelle N. Wormmeester

**APPELLEE SONOS INC.'S RESPONSIVE BRIEF**

RORY P. SHEA
GEORGE I. LEE
SEAN M. SULLIVAN
COLE B. RICHTER
**LEE SULLIVAN SHEA & SMITH LLP**
656 WEST RANDOLPH, SUITE 5W
CHICAGO, ILLINOIS 60661
TEL.: (312) 754-9602
*Attorneys for Appellee*

Exemplary Claim 1 of Implicit's U.S. Patent No. 7,391,791:

A method for synchronizing a rendering of a content provided by a source at one or more devices which are nodes of a network, the content having a rendering time, the method comprising:

designating one of the one or more devices a master device, the master device having a master device time and a master rendering time;

designating remaining devices among one of the one or more devices as at least one slave device, the at least one slave device having a slave device time and a slave rendering time;

receiving the content for rendering by the master and at least one slave device;

sending from the master device to the at least one slave device an indication of when the master device renders content corresponding to the master rendering time;

determining a master device time domain, a slave device time domain, and a source time domain;

determining whether a time domain differential exists between the master rendering time, the slave rendering time; and

adjusting, based on the received indication, the rendering of the content at the at least one slave device within the slave device time domain and in proportion to the time domain differential when present to account for variation between when the master device and the at least one slave device to render content that should be rendered at the same time.

Appx172.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 20-1173, -1174

**Short Case Caption** Implicit LLC v. Sonos, Inc.

**Filing Party/Entity** Sonos, Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/05/2024

Signature: /s/ Cole B. Richter

Name: Cole B. Richter

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Sonos, Inc. | | BlackRock Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐     Additional pages attached

iii

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| J. Dan Smith, Esq. | Jae Y. Pak, Esq. | Michael P. Boyea, Esq. |
|---|---|---|
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ....................................................................... ii

TABLE OF CONTENTS .................................................................................v

TABLE OF AUTHORITIES ......................................................................... vii

STATEMENT OF RELATED CASES ............................................................1

STATEMENT OF THE ISSUES ....................................................................1

INTRODUCTION ..........................................................................................2

STATEMENT OF THE CASE ........................................................................4

     I.       SONOS FILES IPRs AND IMPLICIT CONSISTENTLY ARGUES PRIOR INVENTION BY ONLY BALASSANIAN AND BRADLEY ........................................................4

     II.     THE BOARD FINDS THE CHALLENGED CLAIMS INVALID BECAUSE IMPLICIT LACKED CORROBORATING EVIDENCE OF CONCEPTION AND CORROBORATING EVIDENCE OF INUREMENT ........................................................................6

     III.    IMPLICIT APPEALS TO THIS COURT AND STILL ADVANCES THE SAME CONCEPTION ARGUMENT ...................................................................8

     IV.    IMPLICIT BELATEDLY SUBMITS PETITIONS TO CORRECT INVENTORSHIP AND FILES ITS REQUESTS FOR DIRECTOR REVIEW ............................................9

     V.     IMPLICIT SOUGHT A STAY IN THIS COURT UNTIL ITS INVENTORSHIP CORRECTIONS WERE GRANTED .....................................................................10

     VI.    THE USPTO GRANTS IMPLICIT'S PETITIONS TO CORRECT INVENTORSHIP AND THIS COURT ORDERS ANOTHER LIMITED REMAND ...................................10

VII. ON REMAND, THE BOARD CONCLUDED THAT THE CERTIFICATES OF CORRECTION DID NOT HAVE ANY EFFECT ..................................................11

VIII. IMPLICIT'S APPEAL ..............................................................14

SUMMARY OF THE ARGUMENT .......................................................14

STANDARD OF REVIEW ....................................................................18

ARGUMENT ........................................................................................21

I. REGARDLESS OF THE RETROACTIVE EFFECT OF THE CERTIFICATE OF CORRECTION, WAIVER AND FORFEITURE PRECLUDE IMPLICIT FROM REARGUING THE FINAL WRITTEN DECISIONS ......................21

II. REGARDLESS OF THE RETROACTIVE EFFECT OF THE CERTIFICATE OF CORRECTION, JUDICIAL ESTOPPEL PREVENTS IMPLICIT FROM REARGUING THE FINAL WRITTEN DECISIONS ......................28

A. Implicit's Antedating Arguments Are Inconsistent ..................29

B. The Board Adopted Implicit's Inventorship Premise for Purposes of Deciding Whether Implicit Could Antedate ............................................34

C. Sonos Would Suffer Prejudice Absent Judicial Estoppel ..............................................................38

III. AN ALTERNATIVE GROUND FOR AFFIRMANCE LIES IN THE BOARD'S ERRONEOUS INTERPRETATION OF § 256 TO APPLY RETROACTIVELY TO ALL TYPES OF INVALIDITY ................40

IV. RECONSIDERING THE EVIDENCE WITHOUT PERMITTING SONOS TO RESPOND WOULD VIOLATE DUE PROCESS AND THE APA ...................52

CERTIFICATE OF COMPLIANCE .......................................................55

# TABLE OF AUTHORITIES

**CASES**

*Aerolineas Argentinas v. United States*,
  77 F.3d 1564 (Fed. Cir. 1996) ..................................................................27

*Baldwin v. Iowa State Traveling Men's Ass'n*,
  283 U.S. 522 (1931)..................................................................................51

*Bayer CropScience AG v. Dow AgroSciences LLC*,
  851 F.3d 1302 (Fed. Cir. 2017) ........................................................ 19, 20

*Belkin Int'l, Inc. v. Kappos*,
  696 F.3d 1379 (Fed. Cir. 2012) ........................................................ 20, 41

*Bilstad v. Wakalopulos*,
  386 F.3d 1116 (Fed. Cir. 2004) ...............................................................19

*Bonzel v. Pfizer, Inc.*,
  439 F.3d 1358 (Fed. Cir. 2006) ...............................................................19

*Chamberlain Grp., Inc. v. Int'l Trade Comm'n*,
  No. 2020-1965, 2023 WL 3115579 (Fed. Cir. Apr. 27, 2023)..........................19

*Checkpoint Sys., Inc. v. U.S. Int'l Trade Comm'n*,
  54 F.3d 756 (Fed. Cir. 1995) ...................................................................51

*Chou v. Univ. of Chicago*,
  254 F.3d 1347 (Fed. Cir. 2001) ...............................................................44

*Colas Sols., Inc. v. Blacklidge Emulsions, Inc.*,
  759 F. App'x 986 (Fed. Cir. 2019)...........................................................19

*Collabo Innovations, Inc. v. Sony Corp.*,
  802 F. App'x 568 (Fed. Cir. 2020)...........................................................22

*Davis v. Mich. Dep't of Treasury*,
  489 U.S. 803 (1989)..................................................................................43

*Dell Inc. v. Acceleron, LLC*,
  818 F.3d 1293 (Fed. Cir. 2016) ...............................................................52

*Emerson Electric Co. v. SIPCO, LLC*,
  IPR2016-00984 (P.T.A.B. Jan. 24, 2020)......................................................50

*Ericsson Inc. v. Intell. Ventures I LLC*,
  901 F.3d 1374 (Fed. Cir. 2018) .................................................................20

*FDA v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000)................................................................................42

*Finjan, Inc. v. Cisco Sys., Inc.*,
  837 F. App'x 799 (Fed. Cir. 2020) ............................................................21

*Frank's Casing Crew & Rental Tools, Inc. v. PMR Technologies, Ltd.*,
  292 F.3d 1363 (Fed. Cir. 2002) .................................................................45

*Google LLC v. IPA Techs. Inc.*,
  34 F.4th 1081 (Fed. Cir. 2022) .................................................................48

*Heat Techs., Inc. v. Papierfabrik Aug. Koehler Se*,
  No. 2019-120, 2019 WL 3430477 (Fed. Cir. July 18, 2019) ...........................45

*In re Donaldson Co.*,
  16 F.3d 1189 (Fed.Cir.1994) ....................................................................20

*In re Google Tech. Holdings LLC*,
  980 F.3d 858 (Fed. Cir. 2020) ..................................................................21

*In re Kathawala*,
  9 F.3d 942 (Fed.Cir.1993) .......................................................................20

*In re Nuvasive, Inc.*,
  842 F.3d 1376 (Fed. Cir. 2016) ........................................................ 18, 19, 22

*IOENGINE, LLC v. Ingenico Inc.*,
  100 F.4th 1395 (Fed. Cir. 2024) ...............................................................19

*Kingdomware Techs., Inc. v. United States*,
  579 U.S. 162 (2016)................................................................................41

*LendingTree, LLC v. Zillow, Inc.*,
  656 F. App'x. 991 (Fed. Cir. 2016) ............................................................25

*Lizut v. Department of Army*,
717 F.2d 1391 (Fed. Cir. 1983) ...............................................................51

*Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*,
150 F.3d 1374 (Fed. Cir. 1998) ..............................................................20

*New Hampshire v. Maine*,
532 U.S. 742 (2001)................................................................. 19, 29, 39

*Pannu v. Iolab Corp.*,
155 F.3d 1344 (Fed. Cir. 1998) ......................................................... 43, 44

*Parus Holdings, Inc. v. Google LLC*,
70 F.4th 1365 (Fed. Cir. 2023) ..............................................................22

*Perry v. Blum*,
629 F.3d 1 (1st Cir. 2010)....................................................................13

*Power Integrations, Inc. v. Semiconductor Components Indus., LLC*,
926 F.3d 1306 (Fed. Cir. 2019) ..............................................................41

*Qualcomm Inc. v. Intel Corp.*,
6 F.4th 1256 (Fed. Cir. 2021) ............................................................ 52, 53

*Riverwood Int'l Corp. v. R.A. Jones & Co.*,
324 F.3d 1346 (Fed. Cir. 2003) ........................................................... 48, 49

*Roche Palo Alto LLC v. Ranbaxy Lab'ys Ltd.*,
551 F. Supp. 2d 349 (D.N.J. 2008).......................................................... 46, 50

*Shreckhise v. Ritchie*,
160 F.2d 593 (4th Cir. 1947) ................................................................43

*Solomon v. Kimberly-Clark Corp.*,
216 F.3d 1372 (Fed. Cir. 2000) ..............................................................45

*Stark v. Advanced Magnetics, Inc.*,
29 F.3d 1570 (Fed. Cir. 1994) ...............................................................24

*Transclean Corp. v. Jiffy Lube Intern., Inc.*,
474 F.3d 1298 (Fed. Cir. 2007) ......................................................... passim

*Trustees in Bankr. of N. Am. Rubber Thread Co. v. United States*,
593 F.3d 1346 (Fed. Cir. 2010) .................................................................19

*U.S. v. Arthrex*,
594 U.S. 1 (2021).....................................................................................9

*United States v. Olano*,
507 U.S. 725 (1993)...............................................................................21

*University of Pittsburgh v. Hedrick*,
573 F.3d 1290 (Fed. Cir. 2009) .............................................................34

*ViaTech Techs. Inc. v. Microsoft Corp.*,
733 F. App'x 542 (Fed. Cir. 2018),........................................................27

*VirnetX Inc. v. Apple Inc.*,
665 F. App'x 880 (Fed. Cir. 2016) .........................................................21

*Viskase Corp. v. Am. Nat. Can Co.*,
261 F.3d 1316 (Fed. Cir. 2001) ....................................................... 46, 49

**STATUTES**

35 U.S.C. § 255 .......................................................................................46

35 U.S.C. § 256 .................................................................................. passim

5 U.S.C. § 554(c) ....................................................................................52

5 U.S.C. § 556(d) ....................................................................................52

**CONGRESSIONAL RECORDS**

1952 U.S.C.C.A.N. 2394 ..................................................................... 43, 44

S.Rep. No. 82-1979 (1952) ......................................................................43

## STATEMENT OF RELATED CASES

This appeal may affect or be affected by the district court case Implicit brought against Sonos asserting infringement of the claims that were cancelled by the Board in the underlying IPRs, *Implicit, LLC v. Sonos, Inc.*, Case No. 1:17-cv-00259 (D. Del.).

## STATEMENT OF THE ISSUES

At issue in this appeal is the following:

1.     Whether the Board abused discretion when it found that waiver, forfeiture, and judicial estoppel applied to prevent Implicit from making a new antedating argument once Implicit corrected inventorship to add a new inventor after the IPRs had concluded.

2.     Whether the Board's prior finding of invalidity under pre-AIA §§ 102(e) and 103(a) is nullified when a patentee corrects inventorship under § 256 after the Board's proceedings have completed and jurisdiction has passed to this Court.

**INTRODUCTION**

Faced with a compelling invalidity case against its patents in IPRs, Implicit attempted to antedate the asserted prior art. Implicit's patents named two inventors, Balassanian and Bradley. But to support its antedating attempt, Implicit collected evidence from only Balassanian. Implicit submitted this evidence to the Board and asked it to find that Balassanian and Bradley conceived the invention before the prior art date.

But Implicit's evidence suffered from a problem common with antedating attempts – it was not corroborated. Balassanian's declaration stated that he and Bradley conceived the invention in early 2001 and then communicated the invention to employee Carpenter, who assisted with reducing it to practice by developing source code purportedly embodying the invention in late 2001. But the documentary evidence submitted with the declaration did not corroborate conception by Balassanian and Bradley. All the documentary evidence was either silent as to the subject matter of the claims, undated, listed no author, or listed an "author" in metadata that was not Balassanian or Bradley. Additionally, all the evidence came from one source: Balassanian.

As such, the Board found that the documentary evidence did not and could not corroborate the interested testimony of Balassanian. The Board also found that, even assuming conception had been established (which it had not), the work

2

of employee Carpenter in purportedly reducing the invention to practice could not inure to the benefit of the inventors because no evidence corroborated the sole testimony of Balassanian that he and Bradley told Carpenter about the invention. Thus, any work by Carpenter, even if relevant, did not inure to the benefit of the inventors.  For these reasons, the Board rejected the antedating attempt and found the challenged claims anticipated or obvious in view of the prior art.

Now faced with invalid claims, Implicit throws a Hail Mary.  While on remand from this Court to request Director Review under *Arthrex*, Implicit reckoned that if it could go back in time and tell the Board that Carpenter was an inventor all along, then Implicit would not need to corroborate that Balassanian and Bradley told Carpenter about the invention.[1]  So, pretending it never made the argument that Balassanian and Bradley conceived alone and then told Carpenter about the invention, Implicit in 2021 gathered Balassanian, Bradley, and Carpenter – and they all agreed that, after 20 years, Carpenter was an inventor after all.

Upon correcting its patent under § 256 to reflect this new inventorship, Implicit asks this Court to require the Board to re-open the IPRs and let Implicit repudiate everything it has already told the Board about prior invention. Unfortunately for Implicit, there are legal safeguards in place that prevent such do-

---

[1] Never mind that the Board held that Implicit failed to corroborate conception in the first place.  Thus, notwithstanding inurement, Implicit's antedating attempt would have failed.

overs, including waiver, forfeiture, and judicial estoppel – not to mention the plain language of the corrections statute itself, § 256.

## STATEMENT OF THE CASE

## I. SONOS FILES IPRs AND IMPLICIT CONSISTENTLY ARGUES PRIOR INVENTION BY ONLY BALASSANIAN AND BRADLEY

Sonos filed two petitions for *inter partes* review ("IPR") of the '791 and '252 patents. Appx301; Appx4001. Sonos argued that the challenged claims of these patents are unpatentable over the Janevski reference alone or in combination with one or more other references. Appx335; Appx4031-4033.

In December 2018, Implicit presented its patent owner responses ("PORs") to Sonos's petitions. Appx468-518; Appx4157-4206. In these PORs, Implicit attempted to antedate the prior art by submitting (i) sworn testimony from inventor Balassanian and (ii) documentary evidence, including source code, produced by Balassanian. Appx483-501; Appx4173-4190. Implicit argued that this evidence showed that Balassanian and Bradley conceived the inventions of the '791 and '252 Patents in early 2001 and then communicated the inventions to Carpenter in late 2001, who assisted with reducing them to practice. *Id.*

Throughout the IPR proceedings, Implicit argued consistently that only Balassanian and Bradley conceived the alleged inventions while Carpenter merely assisted with reducing them to practice. *E.g.,* Appx489; Appx4178-4179. For instance, in its PORs, Implicit was clear that only Balassanian and Bradley

4

conceived the inventions, while Carpenter only assisted in reducing them to practice. Appx489-490; Appx4178-4179 ("Mr. Balassanian and Mr. Bradley conceived of the inventions set forth in the Challenged Claims and worked to reduce them to practice. After Mr. Balassanian and Mr. Bradley conceived of the inventions, they communicated those inventions to BeComm's internal engineering and development staff." (citations omitted)). Mr. Balassanian's sworn testimony confirmed the same. Appx2575 ("Mr. Bradley and I solved the synchronization problem and conceived the inventions set forth in the Claims of the Patents…We communicated those inventions to BeComm's internal engineering and development staff to reduce them to practice.").

Balassanian again confirmed that Carpenter was not an inventor when Balassanian was cross-examined under oath during the IPR proceedings. For example, in response to the question "Did Guy Carpenter contribute to . . . any conception of the claims?" Mr. Balassanian testified "**I don't believe so**." Appx1974.

At no point in the IPR proceedings did Implicit argue that Carpenter conceived of any part of the invention. This was a deliberate and strategic choice by Implicit, who was in possession of all the facts and evidence concerning conception and reduction to practice and who was represented by the same counsel as Balassanian and Carpenter. Appx2378. Notably, Implicit presented no

evidence from Mr. Carpenter, either in the form of a declaration or affidavit or documentary evidence from the custodial files from Carpenter. And neither Implicit nor Carpenter attempted to correct inventorship during the IPR proceedings, despite that Implicit's IPR counsel had been in communication with Carpenter at this time. Appx2378.

Recognizing this, Implicit admits (at 10 fn. 2) that during the IPR proceeding its "analysis" was that Balassanian and Bradley conceived the invention and this prior conception would antedate the asserted prior art.[2]

## II. THE BOARD FINDS THE CHALLENGED CLAIMS INVALID BECAUSE IMPLICIT LACKED CORROBORATING EVIDENCE OF CONCEPTION AND CORROBORATING EVIDENCE OF INUREMENT

On September 16, 2019, the Board issued its final written decisions rejecting Implicit's antedating attempt and finding the challenged claims invalid over the prior art. Appx27-77; Appx104-157.

Regarding Implicit's attempt to antedate the prior art, the Board concluded that Balassanian's declaration claiming that the named inventors has conceived of

---

[2] Implicit inappropriately quotes (at 11) from papers that the Board declined to receive into evidence. Br. at 11 (quoting from Appx617 and citing Appx607-627; Appx4290-4310; Appx713-718). Implicit attempted to supplement the record to have this evidence admitted, which the Board denied. Appx713-718. Implicit has not appealed the Board's denial of Implicit's motion to submit this supplemental evidence. As such, the Court should disregard these quotations as they are not in the record.

the invention in early 2001 was insufficient to establish conception of the invention because it was uncorroborated. Appx46 ("We have reviewed other evidence in the record . . . and find no indication or suggestions that corroborate conception. The documents do not identify Messrs. Balassanian and Bradley nor do they provide disclosures that evince possession of invention . . . ."); Appx125 ("In summary, none of the BeComm internal documents, demonstrations of BeComm technology, or BeComm source code corroborate Mr. Balassanian's testimony that he and Mr. Bradley conceived of the challenged claims . . . ."); *id.* ("Considering the record before us as a whole, we determine that Patent Owner fails to meet its burden of producing evidence sufficient to show conception by Mr. Balassanian and Mr. Bradley . . . ."). The supporting documentary evidence came from a single source (Balassanian) and was either undated, silent as to the claimed subject matter, listed no author, or listed an author in the metadata that was not one of the named inventors. Appx46-47; Appx125.

Additionally, the Board concluded that source code developed in late 2001 by Carpenter did not inure to the benefit of the inventors to show reduction to practice because no evidence was presented to corroborate Balassanian's claim that he and Bradley had ever disclosed the invention to Carpenter. Appx47 ("There is no documentary evidence in the record, besides the limited testimony in Mr. Balassanian's declaration reproduced above, that supports that there was . . . any

communication of the invention from Messrs. Balassanian and Bradley to

BeComm's internal engineering and development staff, or more specifically, to

Mr. Carpenter."); *id.* ("Patent Owner does not address the issue of communication

of the invention in order to inure to inventor's benefit in its briefing.); *id.* ("In sum,

there is no evidence provided by Patent Owner as to . . . whether the inventors

communicated the invention to Mr. Carpenter, or whether Mr. Carpenter was

working at the inventors' request to reduce the invention to practice—with the

exception of the limited testimony of Mr. Balassanian."); Appx125 ("In summary,

none of the . . . internal documents, demonstrations of . . . technology, or . . .

source code corroborate Mr. Balassanian's testimony that he and Mr. Bradley . . .

communicated the inventions to Mr. Carpenter.").

## III.   IMPLICIT APPEALS TO THIS COURT AND STILL ADVANCES THE SAME CONCEPTION ARGUMENT

In November 2019, Implicit appealed the final written decisions to this

Court.  Appx1083; Appx4766.  In its opening brief in May 2020, Implicit

reiterated its prior conception argument to this Court.  Dkt. 25, pp. 7, 20 ("Mr.

Balassanian and his co-inventor, BeComm Development Manager Scott Bradley,

then solved the synchronization problems. They conceived of the inventions,

which BeComm reduced to practice by the Fall of 2001 . . . . Implicit's evidence

even corroborated the testimony that Mr. Balassanian and Mr. Bradley conceived

of the invention and then communicated the invention to Mr. Carpenter to implement it for their benefit . . . .") (citations omitted).

Before reaching the merits of this appeal, in November 2021, this Court granted Implicit a limited remand pursuant to *U.S. v. Arthrex*, 594 U.S. 1(2021) for the purpose of filing a Request for Director Review. Dkt. 70.

## IV.  IMPLICIT BELATEDLY SUBMITS PETITIONS TO CORRECT INVENTORSHIP AND FILES ITS REQUESTS FOR DIRECTOR REVIEW

While the case was on remand to the PTAB in December 2021 so that Implicit could request Director Review pursuant to *Arthrex*, Implicit sought to correct inventorship to add Carpenter as an inventor. Implicit believed that adding Carpenter as an inventor would enable Implicit to make a new antedating argument that would not require any showing that Carpenter's reduction to practice inured to the benefit of the named inventors. So, in December 2021, long after the Board's final written decisions were rendered in 2019, and while the case was on remand to the PTAB for the limited purpose of filing a Request for Director Review, Implicit filed *ex parte* requests to correct inventorship by adding Carpenter as an inventor. Dkt. 78 at 174-214.

Implicit then used the Requests for Director Review to argue that the Board should reopen proceedings to find that Implicit had antedated the prior art in view of this changed inventorship and its new antedating argument. *Id.* at 216-251. The

Commissioner denied the Requests for Director Review on February 7, 2022.  Dkt. 71.

The new antedating argument Implicit seeks to make, which is based on Carpenter's alleged conception, directly contradicts the antedating argument Implicit advanced before the Board and this Court, and the sworn direct and cross-examination testimony of inventor Balassanian.  Appx483-501; Appx4173-4190; Appx2575; Appx1974; Dkt. 25.

## V. IMPLICIT SOUGHT A STAY IN THIS COURT UNTIL ITS INVENTORSHIP CORRECTIONS WERE GRANTED

After the PTAB denied Implicit's Requests for Director Review, the case returned to this Court.  Upon return, this Court *sua sponte* ordered Implicit to file amended notices of appeal, struck prior briefing, and ordered Implicit to file a substitute opening brief.  Dkt. 72.  Instead of doing this, Implicit filed another motion to stay or terminate the appeal through remand pending the decision on Implicit's petitions to correct inventorship.  Dkt. 78.  This Court ordered the appeal stayed until the Director acted on the petitions.  Dkt. 81.

## VI. THE USPTO GRANTS IMPLICIT'S PETITIONS TO CORRECT INVENTORSHIP AND THIS COURT ORDERS ANOTHER LIMITED REMAND

Implicit's petitions to correct inventorship were granted in August 2022. Dkt. 84.  In view thereof, this Court ordered a limited remand and ordered the

Board to "issue an order addressing what, if any, impact the certificates of correction would have on the final written decisions in these cases." Dkt. 85.

## VII. ON REMAND, THE BOARD CONCLUDED THAT THE CERTIFICATES OF CORRECTION DID NOT HAVE ANY EFFECT

During the remand, the parties filed briefs arguing whether and to what extent the 2022 certificates of correction affect the 2019 final written decisions. Appx1235-1256; Appx1267-1278; Appx1210-1227; Appx1257-1266. After considering the parties' arguments, the Board made three rulings.

First, the Board determined that § 256 applies "retroactively in general" such that it could consider, under § 256, whether to modify the final written decisions that issued years before Implicit corrected inventorship. Appx10.

Second, the Board concluded that Implicit had both waived and forfeited the ability to raise a new antedating argument in the IPRs. Appx21-25. Specifically, the Board recognized that Implicit could have corrected inventorship during the proceeding in order to raise "when it had the chance during the proceeding" the new antedating argument based on Carpenter's alleged conception. Appx22. The Board identified that Implicit was in sole possession of the evidence of inventorship, and that this evidence remained unchanged during trial. Appx23. Accordingly, the Board concluded that if the evidence justifies a change in inventorship now, it would have so justified that same change during the proceeding. *Id.* Moreover, the Board found Implicit's failure to correct

11

inventorship during the proceeding and, in fact, waiting to correct until the IPRs had concluded and jurisdiction had passed to this Court, to be "more egregious" than the typical scenario in which the Board finds waiver. Appx23-24. As such, the Board found that Implicit both intentionally relinquished the right to assert during the IPRs that Carpenter was an inventor for purposes of antedating (waiver) and failed to timely assert during the IPRs that Carpenter conceived for purposes of antedating (forfeiture). Appx23.

Implicit argued on remand that it was justified in waiting to correct inventorship because the Board's final written decisions "illuminated Mr. Carpenter's necessary presence as an inventor and timely led to correct petitions." Appx1263 (internal quotations omitted). But the Board rejected this explanation because it concluded that "[t]he Final Decisions did not make a determination on inventorship, that is, as discussed, the Decisions only addressed whether the documentary evidence corroborated testimonial evidence of conception and communication of the invention." Appx16.

Third and finally, the Board also concluded that judicial estoppel applied to preclude Implicit from arguing its new antedating argument because each judicial estoppel factor was met. Appx11-21.

As to the first factor, the Board concluded that Implicit's new antedating argument based on Carpenter's alleged conception was contrary to the antedating

12

argument Implicit presented during the IPRs.  Appx12-16.  The Board recognized

that, during the IPRs, Implicit asserted that it could antedate the prior art because

Balassanian and Bradley conceived and then told Carpenter about the invention so

he could reduce it to practice, whereas now Implicit seeks to argue that it can

antedate the art because Carpenter conceived.  Appx12-13; Appx16.  Rather than

dispute that these positions are contrary, Implicit argued (again) that it was

justified in seeking the corrections based on the Board's conclusions in the final

written decisions.  Appx13.  But the Board rejected this argument for the same

reasons it rejected it in the context of finding waiver and forfeiture.  Appx13;

Appx16.

As to the second factor, the Board concluded that Implicit succeeded in

persuading the Board to adopt Implicit's earlier, contrary position that Balassanian

and Bradley alone conceived.  Appx17.  The Board recognized that a party "need

not show that the earlier representation led to a favorable ruling on the merits . . .

but must show that the court adopted and relied on the represented position either

in a preliminary matter or as part of a final disposition." Appx18 (quoting *Perry v.

Blum*, 629 F.3d 1, 11 (1st Cir. 2010) and citing *Transclean Corp. v. Jiffy Lube

Intern., Inc.*, 474 F.3d 1298, 1307 (Fed. Cir. 2007)).  Under this framework, the

Board explained that it adopted and relied on the evidence and argument that

Balassanian and Bradley conceived the invention and proceeded, under this

premise, to analyze whether this evidence and argument was sufficiently corroborated. *Id.*

As to the third factor, the Board concluded that allowing Implicit to return to the Board to make a contrary antedating argument on the basis of a post-IPR correction of inventorship would prejudice Sonos because it would "require the additional expenditure of resources by [Sonos]." Appx19.

## VIII. IMPLICIT'S APPEAL

Implicit now appeals the Board's decision on remand and takes issue only with the Board's decision that the changed inventorship had no effect on the 2019 final written decisions because Implicit waived and forfeited the issue and because judicial estoppel operated to preclude Implicit from advancing a contrary antedating argument.

## SUMMARY OF THE ARGUMENT

Implicit does not appeal the underlying prior art invalidity of the challenged claims, or even the Board's findings that Implicit failed to antedate the art under its first antedating argument. Instead, Implicit only appeals the Board's decision not to reopen the IPR proceedings and let Implicit make a different antedating argument. Three independent grounds support affirmance of the Board's refusal to redo the IPRs simply because Implicit wants another go at a new antedating argument.

14

*First*, Implicit has both waived and forfeited the argument. Implicit made an antedating argument to the Board during the IPR proceedings. This argument was that Balassanian and Bradley conceived in early 2001 and communicated the invention to Carpenter, who assisted in reducing the invention to practice in late 2001. It made no demurrer that inventorship was incorrect. In fact, its very argument was that Carpenter was not an inventor – just an employee who, aided by Balassanian and Bradley, developed source code that purportedly practiced Balassanian and Bradley's invention. Now, armed with 2022 certificates of correction adding Carpenter as an inventor, Implicit wants to return to the Board, argue that no inurement need be established given that Carpenter is now an inventor, and argue the Board should reconsider all the other evidence in the light of this new inventorship.

But the Board found that Implicit both waived (because it intentionally relinquished the right to make to make this argument by assessing inventorship and presenting an initial argument contrary to this new argument) and forfeited (because it failed to timely assert this inventorship and this argument when it had the chance) these arguments. No one but Implicit was in possession of the facts concerning inventorship. Implicit specifically made one argument in favor of antedating based on Balassanian and Bradley being the only inventors. This argument failed. And Implicit made no attempt to correct inventorship to add

Carpenter during the IPR proceedings, despite having all the evidence bearing on the issue and despite being in contact with Carpenter during this time. The Board made no findings on inventorship – let alone findings that justify adding Carpenter as an inventor at this stage. Proper inventorship was not at issue and can never be an issue during an IPR. Instead, the Board found that Implicit's own evidence failed to corroborate that Balassanian and Bradley conceived the invention prior to the date of the prior art.

Implicit identifies no abuse of discretion in the Board's findings that Implicit waived and forfeited the issue. Instead, it argues that patentees have a right to correct inventorship (which they do) and patents will not be held invalid for incorrect inventorship when they are corrected (which they won't). But Implicit's patents were not held invalid for incorrect inventorship. They were held invalid because the prior art anticipated or rendered obvious the claimed inventions. It is hallmark practice before the Board, as well as every other tribunal in America, that Implicit does not get a second opportunity to make a different, contradictory argument after the fact.

*Second*, judicial estoppel applies in equal vein to foreclose Implicit's redo. The Board accepted the premise Implicit advanced: that Balassanian and Bradley were the inventors because they conceived the inventions. The Board did not reject this position. The Board found it uncorroborated. The Board had to accept

this premise in order to find no corroboration. The Board did not find as a matter of fact that Balassanian and Bradley were not the sole inventors or that Carpenter was an inventor. Indeed, the Board had no occasion to find such facts because they were not at issue. Instead, the issue was whether Implicit had produced corroborating evidence that Balassanian and Bradley had conceived.

In addition to the Board's acceptance of this premise, Implicit undisputedly seeks to make a contradictory argument on redo. It seeks to argue that it can antedate the art because Carpenter conceived all along, whereas it already told the Board that Carpenter merely learned the invention from Balassanian and Bradley and helped reduce it to practice after conception occurred. The prejudice to Sonos were Implicit entitled to this redo is undeniable. Sonos spent substantial resources litigating the IPRs, developed and took positions, and obtained a favorable result. Given how long ago the relevant time period is, memories and evidence that Sonos could have obtained have undoubtedly faded and been lost. It would work a manifest injustice if all that can be undone by the shifting sands of Implicit's late-breaking inventorship claim. Implicit identifies no abuse of discretion in the Board's use of judicial estoppel.

*Third*, the statute providing for inventorship correction – 35 U.S.C. § 256 – does not provide what Implicit seeks. The statute was designed to correct a very specific type of invalidity from forever invalidating patents. Prior to 1952,

17

inventor misjoinder and nonjoinder were uncorrectable. If the facts bore out that an inventor were erroneously added or omitted, the patent was *per se* invalid. In 1952, Congress enacted § 256 to expressly provide that a patent would not be invalid for misjoinder or nonjoinder if it could be corrected to add or strike the inventor in question. The statute does not say that a patent is not invalid for all causes if it can be corrected. Nor does it compel tribunals to reopen closed records finding patents invalid for causes other than misjoinder or nonjoinder. Nor was it intended to provide patentees with a wait-and-see opportunity to argue one antedating argument, and failing that, wait several more years to correct and return triumphant with new inventorship to argue a second antedating argument and nullify a finding of prior art invalidity.

For any one (or all) of these reasons, the Board's decision to refuse Implicit the right to compel a redo of the IPRs should be affirmed.

**STANDARD OF REVIEW**

In appeals from the PTAB, this Court's review of PTAB decisions is confined to the four corners of the record of arguments and evidence presented by the parties. *E.g.*, *In re Nuvasive, Inc.*, 842 F.3d 1376, 1380 (Fed. Cir. 2016). A party waives an argument that it failed to present to the Board because it deprives the Court of the benefit of the Board's judgment. *IOENGINE, LLC v. Ingenico*

*Inc.*, 100 F.4th 1395, 1402 (Fed. Cir. 2024) (citing *In re Nuvasive*, 842 F.3d at 1380) (other internal citations omitted).

Decisions related to compliance with the Board's procedures and decisions related to waiver, forfeiture and judicial estoppel are reviewed for an abuse of discretion. *Bilstad v. Wakalopulos*, 386 F.3d 1116, 1121 (Fed. Cir. 2004); *see also Colas Sols., Inc. v. Blacklidge Emulsions, Inc.*, 759 F. App'x 986, 989 (Fed. Cir. 2019) (applying abuse of discretion standard to decisions of waiver); *Chamberlain Grp., Inc. v. Int'l Trade Comm'n*, No. 2020-1965, 2023 WL 3115579, at *4 (Fed. Cir. Apr. 27, 2023) (applying abuse of discretion standard to decisions of forfeiture); *Bonzel v. Pfizer, Inc.*, 439 F.3d 1358, 1362 (Fed. Cir. 2006) (applying abuse of discretion standard to decisions involving judicial estoppel (citing *New Hampshire v. Maine*, 532 U.S. 742 (2001)); *Trustees in Bankr. of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346, 1354 (Fed. Cir. 2010) ("Judicial estoppel applies just as much when one of the tribunals is an administrative agency as it does when both tribunals are courts.").

"Abuse of discretion is a highly deferential standard of appellate review." *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1306 (Fed. Cir. 2017). The Board abuses discretion when its decision: "(1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact finding; or (4) involves a record that contains no

evidence on which the Board could rationally base its decision." *Ericsson Inc. v. Intell. Ventures I LLC*, 901 F.3d 1374, 1379 (Fed. Cir. 2018) (citation omitted); *Bayer*, 851 F.3d at 1306 ("To meet the abuse-of-discretion standard, the moving party must show that the district court has made 'a clear error of judgement in weighing relevant factors or in basing its decision on an error of law or on clearly erroneous factual findings.'") (quoting *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 150 F.3d 1374, 1377 (Fed. Cir. 1998)).

This Court reviews questions of law, including the Board's statutory interpretations, de novo. *In re Kathawala*, 9 F.3d 942, 945 (Fed.Cir.1993); *Belkin Int'l, Inc. v. Kappos*, 696 F.3d 1379, 1381 (Fed. Cir. 2012). "When statutory interpretation is at issue, the plain and unambiguous meaning of a statute prevails in the absence of clearly expressed legislative intent to the contrary." *In re Donaldson Co.*, 16 F.3d 1189, 1192–93 (Fed.Cir.1994) (en banc).

**ARGUMENT**

**I.    REGARDLESS OF THE RETROACTIVE EFFECT OF THE CERTIFICATE OF CORRECTION, WAIVER AND FORFEITURE PRECLUDE IMPLICIT FROM REARGUING THE FINAL WRITTEN DECISIONS**

The Board did not abuse discretion in finding that Implicit waived and forfeited its opportunity to argue an earlier invention date based on Carpenter's alleged inventorship.

Waiver is the intentional relinquishment of a known right. *In re Google Tech. Holdings LLC*, 980 F.3d 858, 862 (Fed. Cir. 2020) (citing *United States v. Olano*, 507 U.S. 725, 733 (1993)). Forfeiture is the "failure to make the timely assertion of a right." *Id.* It is hallmark practice before the PTAB that the failure to raise an argument before the Board is a waiver of that argument. *E.g.*, *VirnetX Inc. v. Apple Inc.*, 665 F. App'x 880, 884 (Fed. Cir. 2016) ("Because VirnetX did not present these arguments to the PTAB, they are waived."); *Finjan, Inc. v. Cisco Sys., Inc.*, 837 F. App'x 799, 811 (Fed. Cir. 2020); *see also* Appx463 ("Patent Owner is cautioned that any arguments for patentability not raised in the response may be deemed waived.").

The Board's decision finding that Implicit waived and forfeited the ability to raise its new antedating argument before the Board is not unreasonable or arbitrary. Nor does it suffer from any erroneous conclusion of law or fact finding or involve a naked record devoid of evidence on which a rational decision could be based.

21

Indeed, the facts are undisputed: (i) Implicit made one antedating argument during the IPRs, (ii) the IPRs concluded and Implicit appealed to this Court, (iii) Implicit corrected inventorship thereafter; and (iv) then asked the Board to allow it to make a new antedating argument.

On this record, the Board unsurprisingly found that because Implicit failed to make its new antedating argument during the IPRs, and in fact proceeded to make a different antedating argument during the IPRs, Implicit both waived and forfeited the right to make its new antedating argument. Appx21-25. The Board relied on the oft-affirmed principle that an argument absent from a patent owner's response will be considered waived. *E.g., Parus Holdings, Inc. v. Google LLC*, 70 F.4th 1365, 1373 (Fed. Cir. 2023) (argument waived where not present in patent owner's response); *Nuvasive, Inc.*, 842 F.3d at 1380 (Fed. Cir. 2016) ("a party waives an argument that it failed to present to the PTAB") (internal quotations omitted); *Collabo Innovations, Inc. v. Sony Corp.*, 802 F. App'x 568, 576 (Fed. Cir. 2020) ("argument was not made before the Board and is therefore waived.").

Whether this Court affirms on grounds of waiver or forfeiture is immaterial as the Board's decision is well-reasoned under either doctrine.

Using waiver, the Board found that Implicit intentionally relinquished its right to argue that a different inventorship supports antedating because Implicit held all the evidence on which inventorship was based and affirmatively chose to

argue that Balassanian and Bradley conceived while Carpenter did not (because he learned the invention when Balassanian and Bradley told him about it). Appx22-23. This reasoning is sound and far from arbitrary; indeed, by analyzing its evidence and affirmatively arguing antedating one way, Implicit intentionally relinquished the right to argue it in the IPR proceedings any other way. And just like the warning it gives to every other Patent Owner at the outset of IPRs, the Board advised Implicit that arguments for patentability that are not raised may be deemed waived. Appx463; Appx4124. In full view of this warning, Implicit presented its argument – which it maintained throughout the proceedings – that Balassanian and Bradley conceived the invention and then communicated it to Carpenter for assistance in reducing it to practice. Appx483-501; Appx4173-4190; Appx2575; Appx1974. The Board committed no abuse of discretion in finding that Implicit waived alternative arguments it declined to make.

Using forfeiture, the Board found that Implicit could have corrected inventorship during the IPRs and thus could have made the antedating argument Implicit now desires to make. Appx22-23. It appropriately recognized that not only did Implicit fail to correct inventorship before Implicit filed its response – in order to unlock the argument that Carpenter conceived – but Implicit waited years after the final written decisions were issued and jurisdiction had passed to this Court to correct and then attempt reargument. Appx 23-24 (finding such delay

"more egregious" than normal).  Implicit cites no case entitling it to go back and make a new argument before the Board once jurisdiction passes to this Court.

Because Implicit cannot identify any error in the Board's reasoning, Implicit opts to argue that because patentees cannot waive the ability to correct under § 256, they also cannot waive arguments that are based on such correction.  This argument finds no basis in the law.  Indeed, Implicit strains two lines of cases in this overreach.

First, Implicit suggests (at 38) that its change of course should be excused because "§ 256 on its face 'does not limit the time during which inventorship can be corrected.'" Br. at 38 (citing *Stark v. Advanced Magnetics, Inc.*, 29 F.3d 1570, 1573 (Fed. Cir. 1994)).  But this is a red herring.  The Board here did not rule that Implicit cannot obtain a certificate of correction because it was not timely sought, the Board ruled that Implicit had waived and forfeited its right to argue *to the Board* that corrected inventorship supported a new antedating argument.  As recognized by *Stark*, Implicit's failure to act diligently during the course of the IPR proceedings is a proper basis for forfeiture of the right *to make arguments* during that proceeding.  *See Stark*, 29 F.3d at 1575.  To be clear, Sonos is not arguing in this appeal that the certificates of correction are inoperative.[3]  Sonos's argument is that post-IPR certificates of correction do not compel the Board to reopen finalized

---

[3] Though Sonos reserves this argument for another day, if necessary.

proceedings to consider new arguments based on a belated change.

Second, Implicit argues (at 39-41) that *Egenera* and *LendingTree* support its position. They do not. In *Egenera*, this Court did not address waiver or forfeiture, but rather addressed the issue of judicial estoppel, *Egenera* at 1378-81, which is discussed below. More importantly, in each of these cases, the patent owner had, prior to judgment, raised the issue of correction of inventorship to the trial court and had been erroneously denied the opportunity to correct under § 256. *Egenera*, 972 F.3d at 1378; *LendingTree, LLC v. Zillow, Inc.*, 656 F. App'x. 991, 999 (Fed. Cir. 2016). At issue in the appeals were the denials of correction under § 256. *Id.* But unlike the patentees in these cases, Implicit did not raise its new antedating argument based on corrected inventorship at any time up to and including the final written decisions, and indeed did not do so for years later. Nor did anyone deny Implicit the opportunity to correct the inventorship for its patents. Thus, Implicit's reliance on *Egenera* and/or *Lending Tree* for the extreme proposition that a later-obtained certificate of correction should result in vacatur of an earlier judgment, particularly where the inventorship correction was never raised during the proceedings, is misplaced. [4]

---

[4] *LendingTree* also demonstrates that vacatur is not always appropriate and it does not abuse discretion to apply equitable doctrines in the context of § 256 corrections. *See LendingTree*, 656 F. App'x at 999 (opting not to vacate a district court's determination of invalidity under § 102(f) after the patentee corrected

Implicit next pivots to offering a justification for failing to raise its new antedating argument. But Implicit offered this same justification to the Board on remand, and the Board found it unsupported by the record. Appx12-16. The Board's refusal to use this erroneous justification to override its decision of waiver and forfeiture was not an abuse of discretion – and Implicit offers no reason why it would be.

More specifically, Implicit argues (at 43) that the Board's view of Implicit's evidence changed Implicit's legal analysis of inventorship, and therefore Implicit ought to have the opportunity to make a new antedating argument to the Board. As an initial matter, this excuse fails to come to grips with the fact that Implicit failed to correct for years after the Board provided its view of Implicit's evidence in the final written decisions. This delay alone justifies the finding of forfeiture.

But on the substance, the Board's final written decisions did not evaluate inventorship and determine it to be correct or incorrect. Appx13. Instead, the Board's final written decisions evaluated Implicit's evidence to determine whether it corroborated the testimony on conception. Appx46-47; Appx124-125. The Board's determination of no corroboration did not justify a § 256 correction and

inventorship, but instead remanding and leaving to the discretion of the district court whether not to vacate "given that LendingTree did not timely request identification of the inventors by the jury, [where in view thereof] the district court may decide that vacatur is inappropriate").

does not justify returning to the Board to make a new antedating argument based on this § 256 correction.  Implicit musters no argument that the Board's conclusion that its final written decisions made no inventorship findings was an abuse of discretion.  Besides, a party waiting to see whether a tribunal rules in its favor on one argument does not mean the party has not waived its unraised alternative arguments.  Just as waiver precludes a patentee from advancing unraised alternative infringement theories, *ViaTech Techs. Inc. v. Microsoft Corp.*, 733 F. App'x 542, 554 (Fed. Cir. 2018), waiver also precludes Implicit from arguing a new antedating theory.

Implicit's last volley is that precluding Implicit from using its new antedating argument conflicts with § 256.  It doesn't.  Implicit cites (at 42-43) *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1575 (Fed. Cir. 1996) for the unremarkable proposition that agency regulations cannot override a clearly stated statutory enactment.  But no agency regulation or decision has overridden § 256 here.

Taking the two provisions of § 256 separately, § 256(a) states in relevant part that "the Director may… issue a certificate correcting [inventorship errors]." 35 U.S.C. §256(a).  In this case, a certificate of correction was issued by the Director.

Section 256(b) first states "[t]he error of omitting inventors…shall not

invalidate the patent in which such error occurred if it can be corrected as provided in this section." *Id.* at §256(b). In this case, the patent was not invalidated because of the "error of omitting inventors." Instead, the Board invalidated the patent in view of prior art.

Section 256(b) next states that a court "before which such matter is called in question *may* order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly." *Id.* (emphasis added). Although this provision is inapplicable because Implicit never called proper inventorship into question before any court, Implicit nonetheless obtained the certificate of correction from the Director.

Thus, the Board's determination that Implicit waived and forfeited the right to present its alternative inventorship theory to the Board by failing to present it during the IPRs does not override or conflict with § 256. For these reasons, the Board's waiver and forfeiture decisions were sound exercises of the Board's discretion.

## II. REGARDLESS OF THE RETROACTIVE EFFECT OF THE CERTIFICATE OF CORRECTION, JUDICIAL ESTOPPEL PREVENTS IMPLICIT FROM REARGUING THE FINAL WRITTEN DECISIONS

Judicial estoppel applies to preclude a party from advancing a later position inconsistent with an earlier position advanced by the party and accepted by the tribunal. *Transclean*, 474 F.3d at 1307. Courts apply judicial estoppel against a

party when: (A) the party takes a later position that is "clearly inconsistent" with an earlier position; (B) the party was successful in persuading a court to adopt the earlier position (which thus poses a "risk of inconsistent court determinations"); and (C) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.  *Id.* (citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)).

The Board committed no abuse of discretion in its decision finding each factor satisfied.

### A. Implicit's Antedating Arguments Are Inconsistent

Implicit does not (because it cannot) dispute that the antedating argument it now wishes to make is inconsistent with the one it previously made during the IPRs.  The Board found there was "no dispute" that Implicit's assertions regarding antedating the art have now changed from the assertions advanced during the IPRs. Appx12.  Indeed, Implicit acknowledged on remand that it previously argued that Balassanian and Bradley were the inventors that conceived for purposes of antedating, whereas it now seeks to argue Carpenter also conceived for purposes of antedating such that inurement would no longer be a required showing by Implicit. Appx1212-1213; Appx1226; Appx1264; *see also* Appx483-501; Appx4173-4190; Appx2575; Appx1974.  On these facts, the Board committed no abuse of discretion in finding that Implicit is advancing contrary positions.

On appeal, Implicit raises (at 27-28) a subtle argument that the two positions that should be compared for inconsistency purposes are (i) Implicit's prior inventorship argument, and (ii) Implicit's request to correct inventorship under § 256. In support, Implicit relies (at 29-30) on *Egenera* because *Egenera* found that two different inventorship corrections under § 256 were not inconsistent positions under the judicial estoppel analysis. *Egenera*, 972 F.3d at 1372, 1376. But this argument grossly distorts the Board's analysis in this case and is legally and factually inapposite, besides.

First, it distorts the Board's analysis because the Board, in the context of judicial estoppel, properly analyzed the positions Implicit took and then sought to take *before the Board*. Implicit initially advanced the position that the prior art was antedated because Balassanian and Bradley conceived and then communicated the invention to Carpenter whose reduction to practice inured to the benefit of the Balassanian and Bradley. Appx483-501; Appx4173-4190; Appx2575; Appx1974. And now, Implicit wants to advance the contrary position that Carpenter did not learn about the invention from Balassanian and Bradley but instead was someone who conceived the invention in his own right, in order to argue that inurement no longer needs to be established for purposes of antedating. Appx1212-1213. These are undisputedly contrary positions, which Implicit took and is seeking to take before the Board itself. The Board compared Implicit's original antedating

argument with Implicit's new antedating argument and determined them to be inconsistent. Appx12-16. This was the proper comparison under the first factor of judicial estoppel. *Transclean*, 474 F.3d at 1307 ("The doctrine of judicial estoppel prohibits a party from taking inconsistent positions in the same or related litigation.").

Second, *Egenera* is legally and factually inapposite to our case because it dealt with a fundamentally different scenario. In *Egenera,* the patentee removed an inventor via a first § 256 correction. Then, after an adverse claim construction ruling and subsequent factual determinations on the defendant's improper-inventorship defense, the patentee sought to add the inventor back via a second § 256 correction. *Egenera*, 972 F.3d at 1372, 1376. Using judicial estoppel, the trial court refused to allow the second § 256 correction, and this Court held that such refusal was error. *Id.*

Specifically, this Court held that the patentee's first § 256 correction to remove the inventor was not an inconsistent position with the second § 256 correction under the judicial estoppel analysis because the question of inventorship turned on the claim construction made by the trial court. *Id* at 1376. This Court held that the patentee made the first § 256 correction under its prior interpretation of the claim. Once the trial court construed the claim – over the patentee's opposition – the patentee sought the second § 256 correction. *Id.* This Court held

that the second correction was not inconsistent because the claim construction "illuminated [the joint inventor's] necessary presence" as an inventor. Thus, there was no inconsistency in requesting correction based on the trial court's relevant finding. *Id.*

Our case is factually inapposite because there was no claim construction that illuminated Carpenter's presence as an inventor. Rather, after losing its bid to swear behind prior art as a result of failed corroboration, Implicit deemed it advantageous to have its evidence considered again in light of a different inventorship. That desire does not make its prior positions any less inconsistent. As the Board correctly recognized on remand, no factual findings were made in the underlying IPR proceedings that impacted the question of inventorship. Appx15. Implicit is simply seeking a change in inventorship to avoid a required showing of inurement – not because the Board construed a claim in a way that illuminated the new inventor's presence or made a finding of fact on an improper-inventor defense. Therefore, *Egenera* does not support Implicit's consistency argument.

This case is also legally inapposite because, in *Egenera*, the issue was the trial court's error in refusing to allow correction under § 256. *Id.* at 1369. In our case, the Board has not, like the trial court in *Egenera*, denied Implicit the opportunity to correct. Instead, the Board has denied Implicit the opportunity to return to the Board after conclusion of the IPRs and make a new antedating

argument based on corrected inventorship under § 256. The Board's refusal to let Implicit make a contrary argument in the context of a trial proceeding is fundamentally different that a trial court denying a party from correcting its patent under § 256.

Coming to grips with the fact that its positions are inconsistent, Implicit can only attempt to offer a justification for its contrary positions. Indeed, Implicit offers (at 29) the same justification as it offered for why its argument should not be waived or forfeited – namely, that the Board's final written decisions "made clear factual determinations regarding the source-code authorship." But, for all the reasons set forth above, none of the so-called "factual determinations" Implicit identifies relate to inventorship or justify Implicit's correction; nor do they require the Board to reopen proceedings. *E.g.,* Appx123; Appx156; Appx47. As the Board correctly found on remand, none of the Board's statements in the underlying IPRs reflect that the Board made any determinations regarding the correctness or incorrectness of the stated inventorship. Appx13; Appx15-16.

Implicit makes much of the purported finding by the Board that Carpenter authored the code or authored a Word document describing the invention. But, even if these were findings of fact (as opposed to merely pointing out what metadata suggests), they are not findings that Carpenter was an inventor and they do not justify returning to the Board to make an inconsistent argument. In fact,

pointing out that Carpenter possibly authored these *post-conception* documents is consistent with Balassanian's testimony that Balassanian and Bradley conceived the inventions and then communicated them to Carpenter, who reduced them to practice by creating such documents.

And even if Carpenter authored the source code and the Word document entirely on his own without any communication with Balassanian or Bradley (something the Board did not find and Implicit did not argue below), this still would not justify Carpenter being listed as an inventor. Only those who were first to conceive are entitled to be inventors. *University of Pittsburgh v. Hedrick*, 573 F.3d 1290 (Fed. Cir. 2009) (holding a research assistant was not a joint inventor because the invention had already been conceived by the senior inventors).

**B.     The Board Adopted Implicit's Inventorship Premise for Purposes of Deciding Whether Implicit Could Antedate**

There is no dispute that Implicit initially advanced the premise that Balassanian and Bradley were inventors (because they conceived) and Carpenter was not an inventor because Carpenter learned the invention from Balassanian and Bradley. Appx483-501; Appx4173-4190. To decide whether Implicit antedated the asserted art, the Board necessarily accepted and adopted this premise and proceeded to analyze whether Implicit had produced sufficiently corroborating evidence of conception. Appx42-47; Appx112-125. The Board correctly found on remand that Implicit advanced, and the Board adopted, this premise for purposes of

deciding whether Implicit could antedate the asserted prior art. Appx17 ("[D]uring trial we accepted Patent Owner's representations as to the inventorship of the subject matter of the patents, and considered whether the documentary evidence provided corroboration of that testimony under a rule of reason—and our associated determinations were directed to the sufficiency of the documentary evidence.")

To sidestep this clear finding, Implicit sets up a strawman as to what its "real" position was in an attempt to show that the Board did not accept its "real" position. But, as Implicit argues (at 32), its "real" position boils down to the argument that Implicit could antedate the art. Of course, that trivializes the entire analysis into one of whether Implicit won the day or not, which is not how this Court has instructed judicial estoppel to be applied.

More specifically, Implicit argues (at 32) that its "real" position was that Balassanian and Bradley "were inventors *of claims that could antedate Janevski* because the work of an employee, Mr. Carpenter, *inured to their benefit*." But even here, Implicit does not dispute that it previously argued that Balassanian and Bradley were inventors and that Carpenter was not an inventor for purposes of antedating. This was the necessary premise that the Board accepted when it analyzed the antedating argument and searched for sufficient corroboration. Before the Board even got to inurement, the Board analyzed whether there was

corroborating evidence that Balassanian and Bradley conceived the invention. Appx46; Appx125. Finding none, the Board rejected the antedating attempt.[5] But the Board did not reject the premise that Balassanian and Bradley were inventors and Carpenter was not. Appx17-18; Appx46; Appx125; *see also* Appx13 ("[T]he issue addressed in the Final Written Decisions was not the correct inventorship of the patents, but rather the sufficiency of corroborating evidence of conception and communication of the invention in order for the inventors to benefit from Mr. Carpenter's work.").

Accepting Implicit's "real" position would be akin to holding that the Board did not "accept" Implicit's position because Implicit failed to achieve the ultimate outcome Implicit desired. This Court's decision in *Transclean* instructs that the judicial estoppel test is not so narrow. *See Transclean Corp.*, 474 F.3d at 1307. According to *Transclean*, a party need not prevail on the ultimate issue in question for judicial estoppel to apply. *Id.* It is enough that a party advances a particular premise – here, that Balassanian and Bradley conceived and Carpenter did not – and that the Board accepted this premise for purposes of its analysis. *See id.* This is what occurred, and therefore judicial estoppel applies even though Implicit ultimately lost the issue. *See id.*

---

[5] The Board also found no corroborating evidence of communication of the invention to Carpenter, which defeated a showing of inurement. Appx47; Appx125. This was an independent reason that the antedating attempt failed.

In *Transclean*, the patentee argued that customers were in privity with a manufacturer, which meant that claim preclusion might apply to bar the customers from relitigating an issue of infringement. *Id.* at 1302. The trial court, in considering whether claim preclusion applied, accepted the patentee's premise that the customers were in privity with the manufacturer, but ruled against the patentee on the issue of claim preclusion (because it found that infringement was not previously litigated and thus claim preclusion could not stand). *Id.* at 1302, 1305-07. Later, the patentee tried to repudiate the issue of privity, but this Court held the patentee to its earlier position on privity under principles of judicial estoppel, despite that the patentee lost the ultimate claim preclusion issue. *Id.* at 1307 (explaining that the patentee's request for a determination that privity did not exist for claim preclusion purposes was "clearly inconsistent with the position [the patentee] advocated before the trial court.").

Implicit finds itself in the same position. After an unsuccessful antedating argument in the IPR proceedings (due to its own evidence failing to support its own position), Implicit seeks to reverse course to make a new antedating argument. The Board correctly found that Implicit took a position on inventorship, which was accepted by the Board for purposes of conducting its analysis on corroboration, and Implicit is now judicially estopped from advancing a different, contrary position before the Board. Appx13; Appx17-18. It is irrelevant that Implicit was

unable to ultimately overcome the prior art based on its original position.  *See id.* at 1307.

### C.  Sonos Would Suffer Prejudice Absent Judicial Estoppel

Implicit does not seriously dispute that it would gain an unfair advantage to the detriment of Sonos if Implicit were permitted to advance this new argument. The Board recognized that reopening the proceedings to allow Implicit to make its new antedating argument would require additional resources to be expended by Sonos to address this new argument, thus imposing prejudice on Sonos.  Appx19.

Implicit does not dispute that the parties already litigated the IPRs to completion and that reopening them now to allow Implicit to change an argument would require additional resources.  Further, Sonos met Implicit's positions head-on, developed its arguments and evidence in response, and took positions in the underlying proceedings as a result.  Further, given that the relevant activities took place over 20 years ago, memories have undoubtedly faded and evidence possibly lost.  Had the Board allowed Implicit to repudiate its earlier positions and negate the Board's finding of invalidity in view of its new positions, Sonos, unquestionably, would have been prejudiced though its expenditure of additional resources and via the possible loss of evidence.

Implicit dismisses (at 36) Sonos's assertion that further proceedings before the Board would prejudice Sonos in terms of resource expenditure by stating "[i]t

is Sonos that brought these Board proceedings in the first place…" But Implicit fails to acknowledge that Sonos brought the IPR proceedings in response to Implicit's original infringement suit in district court. Appx308; Appx4009. Besides, when a party brings an IPR proceeding, it expects and plans for that proceeding to have an end. Allowing repeated returns to the proceeding for the patent owner to make alternative and contradictory arguments frustrates the purpose of the IPR regime and subjects the parties and the Board to a waste of resources. This improper use of the judicial process is precisely the outcome that judicial estoppel is intended to preclude. *New Hampshire*, 532 U.S. at 750.

Because it cannot dispute the basis for the Board's decision, and thus cannot show an abuse of discretion in this regard, Implicit pivots (at 34) to argue that "there is nothing 'unfair' about exercising a statutorily prescribed right to correct inventorship commensurate with relevant factfinding." Implicit has already exercised its statutory right to correct under § 256. But there is no statutorily prescribed right to obligate the Board to reopen a final IPR proceeding to reconsider antedating evidence under changed inventorship. Nor, as discussed *supra*, were there any "relevant factfinding[s]" that necessitated or justified Implicit's correction request. The Board's findings had no bearing on the correct inventorship, and the corrections were not justified in view of anything the Board did, unlike the corrections in *Egenera*.

Further attempting to downplay the prejudice, Implicit argues (at 35) "providing both parties an opportunity to address the impact of Implicit's corrected inventorship *was the point of this Court's remand*."  This is incorrect.  The purpose of the remand was clearly stated: to "hav[e] the PTAB issue an order addressing what, if any, impact the certificates of correction would have on the final written decisions in these cases."  Dkt. 85.  The Board has done that – it determined the certificates of correction did not have any impact on the final written decisions because of principles of waiver, forfeiture, and judicial estoppel.   This Court did not mandate the Board to reopen the record or reweigh the evidence.  Its Order expressly contemplated the possibility that the Board would determine that the certificates did not to have "any" impact.  *Id.* ("if any").

For the reasons above, Implicit's conduct more than satisfies the requirements for application of judicial estoppel. The Board did not abuse discretion in its application of judicial estoppel.

III.  **AN ALTERNATIVE GROUND FOR AFFIRMANCE LIES IN THE BOARD'S ERRONEOUS INTERPRETATION OF § 256 TO APPLY RETROACTIVELY TO ALL TYPES OF INVALIDITY**

This Court need not reach this issue of statutory interpretation if it agrees with Sonos that the Board did not abuse discretion in its waiver, forfeiture or judicial estoppel analyses.  Notwithstanding these analyses, the Board erred in

interpreting § 256 as applying retroactively to cure all types of invalidity.[6]  Under the proper interpretation of § 256, certificates of correction changing inventorship have no effect on final determinations of invalidity other than nonjoinder or misjoinder.

As set forth in Sonos's Statement of the Issues: the issue is not whether § 256 applies retroactively as opposed to prospectively, but rather whether § 256 applies to nullify invalidity grounds other than inventor nonjoinder or misjoinder. The plain language and legislative history confirm it does not.

"In statutory construction, we begin with the language of the statute." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016).  The "first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Power Integrations, Inc. v. Semiconductor Components Indus., LLC*, 926 F.3d 1306, 1314 (Fed. Cir. 2019) (internal quotations omitted).

---

[6] Statutory interpretation issues, such as this one, are reviewed de novo.  *See, e.g., Belkin*, 696 F.3d at 1381.

Section 256 states:

> (a) Correction.— Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

> (b) Patent Valid if Error Corrected.— The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. § 256. The first sentence of the second paragraph states that "[t]he error of omitting inventors or naming persons who are not inventors" (i.e., nonjoinder or misjoinder) is the act that "shall not invalidate the patent . . . ." In other words, the antecedent to "shall not invalidate" is the specific recited error "of omitting inventors or naming persons who are not inventors." *Id.*

In this way, the statute does not nakedly recite that a patent shall not be invalid if it can be corrected. Rather, the statute recites the specific type of invalidity that will not invalidate the patent. This plain reading of the statute confirms that no change of inventorship saves a patent from other types of invalidity, like prior art invalidity. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their

place in the overall statutory scheme.'" (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)).

This is the only logical reading given the context of the 1952 amendments, which introduced § 256 into the patent statute. Prior to introduction of the 1952 amendments, misjoinder and nonjoinder were fatal to a patent – there was no ability to correct inventorship. *See Shreckhise v. Ritchie*, 160 F.2d 593, 595 (4th Cir. 1947) ("[A] patent issued in the name of joint patentees, when in fact one of them is the sole inventor, is void; and similarly, when a patent is issued to one person for something which was jointly invented by several the patent is invalid."); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1350 (Fed. Cir. 1998) (collecting cases). The Senate and House Reports on the 1952 Act indicate that § 256 was added to prevent misjoinder and nonjoinder from invalidating a patent.

> Section 256 is a new section in the law that is correlated with section 116 and relates to a mistake in joining a person as a joint inventor. Very often two or three people make an invention together. They must apply as joint inventors. If they make a mistake in determining who are the true inventors, they do so at their peril. This provision permits a bona fide mistake in joining a person as inventor or in failing to join a person as an inventor to be corrected.

S.Rep. No. 82-1979, at 7-8 (1952), *reprinted in* 1952 U.S.C.C.A.N. 2394, 2401; *see also id.* at 2400 ("The existing statute is very strict in requiring that only the inventor may apply for a patent. These two sections provide for certain types of situations where it may be impossible for the inventor himself to apply, or where,

in the case of a joint invention, one of the joint applicants has been inadvertently erroneously included, or a joint inventor inadvertently excluded; the sections provide all the safeguards necessary for the inventor.").

The Revision Notes also reflect that the intent of § 256 was to prevent a patent from being held invalid because of the specific error of misjoinder or nonjoinder.

> The first two paragraphs provide for the correction of the inadvertent joining or nonjoining of a person as a joint inventor. The third paragraph provides that a patent shall not be invalid for such cause, and also provides that a court may order correction of a patent; the two sentences of this paragraph are independent.

*Id.* at 2420. The use of "such cause" confirms Congress's intent that a patent is saved from invalidity under § 256 from, and only from, misjoinder and nonjoinder causes of invalidity.

Under this proper interpretation of § 256, a patent can be corrected to save the patent from invalidity for reasons of nonjoinder or misjoinder. Since the 1952 amendments, this Court has consistently interpreted § 256 to nullify findings of nonjoinder and misjoinder. *E.g., Pannu*, 155 F.3d at 1350 ("Upon such a finding of incorrect inventorship, a patentee may invoke section 256 to save the patent from invalidity."); *Chou v. Univ. of Chicago*, 254 F.3d 1347, 1358 (Fed. Cir. 2001) ("We have previously interpreted § 256 broadly as a savings provision to prevent patent rights from being extinguished simply because the inventors are not

correctly listed.") (internal quotations omitted); *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1381 (Fed. Cir. 2000) ("[W]hen a party has been misjoined or nonjoined, a patent may be saved from invalidity by operation of 35 U.S.C. § 256.").

That the statute has been held to apply retroactively in other contexts does not mean that the Court should apply it retroactively here to nullify findings of prior art invalidity. Indeed, while the statute is retroactive in two specific ways, neither bear on retroactive application to nullify invalidity findings other than nonjoinder and misjoinder.

First, the statute is retroactive in the sense that it permits correction of inventorship even after the patent has been held invalid or unenforceable. *See Frank's Casing Crew & Rental Tools, Inc. v. PMR Technologies, Ltd.*, 292 F.3d 1363, 1377 (Fed. Cir. 2002) ("Nothing in the statute governing a court's power to correct inventorship, 35 U.S.C. § 256, ... prevents a court from correcting the inventorship of an unenforceable patent"); *see also Heat Techs., Inc. v. Papierfabrik Aug. Koehler Se*, No. 2019-120, 2019 WL 3430477, at *2 (Fed. Cir. July 18, 2019) ("[N]othing in § 256 concerns whether naming the true inventor would cause the patent to be invalid for other reasons … jurisdiction under § 256 does not depend on whether the patent may be shown to be invalid.") (internal quotations omitted). In this respect, Implicit's patents have been corrected and

45

now name Carpenter as an inventor despite that the challenged claims of these patents have been determined unpatentable by the Board. But no provision of the statute (and no case applying it) requires tribunals, like the Board, to reopen closed records and judgments of invalidity other than misjoinder or nonjoinder simply because the patent's inventorship has been corrected.

Second, the statute is retroactive in the sense that a patent corrected under § 256 stands corrected as to causes of action that arose before the correction and will not be held invalid under § 102(f) for any prior period that it existed with improper inventorship. *Compare* 35 U.S.C. § 255 ("Such patent, together with the certificate, shall have the same effect and operation in law on the trial of actions for causes thereafter arising as if the same had been originally issued in such corrected form.") *with* § 256. Whereas a party correcting a patent under § 255 cannot assert the corrected patent against a party for a cause of action that arose before the correction issued, a party correcting a patent under §256 can. *See Viskase Corp. v. Am. Nat. Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001) (holding that district court properly refused to reconsider judgment of infringement for the period before inventorship was corrected); *Roche Palo Alto LLC v. Ranbaxy Lab'ys Ltd.*, 551 F. Supp. 2d 349, 359 (D.N.J. 2008) (holding patent was not invalid for period of incorrect inventorship after § 256 correction). But Implicit's patents

were not held invalid under § 102(f), they were held invalid under § 102(e) and § 103(a).

In these respects, Implicit and the Board conflate retroactivity with nullification. That the statute operates retroactively for causes of action and operates to nullify periods of misjoinder and nonjoinder does not mean that it operates to retroactively nullify all types of invalidity. There is no provision in the statute (and no sanction by this Court in its application) that permits changed inventorship to nullify prior findings of prior art invalidity. Likewise, no provision in the statute requires a tribunal to reopen a closed record finding a patent invalid over prior art so that the party can make a new argument in rebuttal.

Implicit cites (at 25) *IPA Techs*, *Riverwood*, *Vikase*, *Roche*, and *SIPCO* for the proposition that § 256 applies retroactively "'in general' against invalidation efforts under 35 U.S.C. § 102(a), (b), (e), or § 103(a), and not just misjoinder under § 102(f)." However, as discussed below, these cases either (i) contemplate applying changed inventorship before final judgment and in the same proceeding in which correction was sought, or (ii) address § 102(f) invalidity, neither of which apply to the facts of our case.[7] Although the statute permits correction *despite*

---

[7] Indeed, Implicit sought its inventorship correction only after the Board's final written decisions were issued and jurisdiction passed to this Court on appeal. If there was a mistake in inventorship, Implicit should have recognized it years ago and sought correction before or at least during the IPRs. This is confirmed by the

invalidation under other provisions of §§ 102 and 103, these cases do not stand for the proposition that correction either nullifies prior findings of invalidity under §§ 102 and 103 or affords a litigant the right to relitigate invalidity findings using waived and forfeited arguments.

*IPA Techs* states (in dicta) that, if inventorship were corrected to add an inventor that also authored a prior art reference, then the prior art reference would not be "by another" as required by pre-AIA § 102(a). *Google LLC v. IPA Techs. Inc.*, 34 F.4th 1081, 1088 (Fed. Cir. 2022). But this Court noted that "IPA cannot raise this argument as a defense without actually seeking correction of inventorship of the patents, which it has not." *Id.* The same is true of Implicit. It cannot raise its antedating rebuttal after the issue has been decided against it without having corrected the patent during the proceeding.

*Riverwood* held that a district court committed error by not permitting a patentee the opportunity to prove inventorship was incorrect on an asserted patent in order to disqualify a prior art reference from being "by another" under pre-AIA § 102(e). *Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1357 (Fed. Cir. 2003). This Court held that, if the patentee could sustain its burden to prove

---

Board's findings of waiver/forfeiture/estoppel. Implicit has cited no case in which § 256 was applied to undo a final judgment of invalidity under §§ 102(a), (b), (e), or § 103(a). Allowing Implicit to use §256, years after the Board's final judgment to render meaningless the judgments entered to this point would encourage other parties to abuse the system and squander judicial resources.

inventorship were incorrect, then the references would not be prior art. *Id.* at 1357. But in *Riverwood*, the patentee attempted to correct inventorship during the proceeding and this Court found the district court's refusal to be error. *Id.* at 1356. Implicit made no such attempt to correct during the IPR proceedings and instead argued a different inventive entity during the proceedings for purposes of antedating. Nor was Implicit denied the opportunity to correct its patents.

*Vikase* is further afield. There, a patentee changed inventorship after it obtained a ruling of infringement against a defendant. *Viskase Corp. v. Am. Nat. Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001). The defendant then argued that the infringement ruling should be vacated because the patents were invalid for the period during which they had incorrect inventorship.[8] This Court held that § 256 provides that "an error of inventorship does not invalidate the patent if such error 'can be corrected as provided in this section.'" *Id.* at 1329 (quoting 35 U.S.C. § 256). This holding merely affirms the undisputed proposition that *inventor misjoinder or nonjoinder* will not affect the validity or enforceability if the patent can be corrected. This Court did not hold, and had no occasion to hold, that upon correction, a party can return to a tribunal and make a contradictory argument in support of antedating prior art.

---

[8] The defendant also argued that the patentee lacked standing to maintain the infringement ruling, but this Court found that there was no evidence that the patentee's ownership rights were affected by the inventorship change. *Id.* at 1329.

In *Roche*, a district court held that a certificate of correction changing inventorship should be construed as a correction under § 256 and thus, denied a motion for invalidity for improper inventorship. *Roche*, 551 F. Supp. 2d at 357-59. This holding is not relevant because it is undisputed that Implicit's corrections were made under § 256.

*SIPCO* is also irrelevant. There, on a similar remand from this Court to determine "what, if any, impact the certificate of correction has on its final written decision in this case," the PTAB held that a certificate of correction issued under § 255 to correct the priority date would not have retroactive effect on the PTAB's final written decisions of invalidity because § 255 does not operate retroactively. *Emerson Electric Co. v. SIPCO, LLC*, IPR2016-00984, Paper 52 at 25-26 (P.T.A.B. Jan. 24, 2020). But, just like the other cases Implicit relies on, *SIPCO* says nothing about waiver, forfeiture, or whether a belated § 256 correction permits a litigant to reopen IPR proceedings to make an antedating argument different from the one it originally made. Moreover, in *SIPCO*, the patent owner attempted correction multiple times during the IPR proceeding, whereas Implicit only sought correction after the proceedings were complete. *Id.* at 7-9.

In sum, these cases say nothing about the prospect of a party making a first antedating rebuttal argument, losing the issue, the judgment becoming final, jurisdiction passing to this Court, and then reopening the proceeding to make a

second antedating rebuttal argument different from the first.  Holding that § 256 permits this would upset bedrock principles of finality and adjudicative disputes. *See Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525–26 (1931) ("Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties."); *Checkpoint Sys., Inc. v. U.S. Int'l Trade Comm'n*, 54 F.3d 756, 760 (Fed. Cir. 1995) ("[S]imple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."); *Lizut v. Department of Army*, 717 F.2d 1391, 1396 (Fed. Cir. 1983) ("Allowing a party to withhold important issues from the [agency] and later present them to this court would undermine the [agency's] authority.").  If Implicit's view of § 256 were sanctioned, then patentees could lie in wait until after any adverse invalidity ruling (including those based on prior art), change inventorship, and then compel tribunals to allow them to relitigate the invalidity ruling under arguments and positions the patentee declined to make and are contradictory to the ones they made.  Under the proper view of the statute, this should be rejected.

## IV. RECONSIDERING THE EVIDENCE WITHOUT PERMITTING SONOS TO RESPOND WOULD VIOLATE DUE PROCESS AND THE APA

If this Court finds the Board abused its discretion in applying waiver, forfeiture, and judicial estoppel and also finds that § 256 operates to nullify invalidity grounds other than misjoinder or nonjoinder, then this Court must permit Sonos an opportunity to address Implicit's antedating rebuttal with arguments and evidence.

The APA requires the Agency to provide "all interested parties opportunity for the submission and consideration of facts [and] arguments . . . [and a] hearing and decision on notice." 5 U.S.C. § 554(c). The Agency must also allow "a party . . . to submit rebuttal evidence . . . as may be required for a full . . . disclosure of the facts." *Id.* § 556(d). In *Dell Inc. v. Acceleron, LLC*, this Court found that the Board denied a party's procedural rights guaranteed by the APA when the Board "rel[ied] in its decision on a factual assertion introduced into the proceeding only at oral argument, after [patent owner] could meaningfully respond." *Dell Inc. v. Acceleron, LLC*, 818 F.3d 1293, 1301 (Fed. Cir. 2016) Similarly, in *Qualcomm Inc. v. Intel Corp.*, the Board in the final decision adopted a construction for a claim term that diverged from a construction agreed upon by both parties. *Qualcomm Inc. v. Intel Corp.*, 6 F.4th 1256, 1263 (Fed. Cir. 2021). This Court held that the Board violated patent owner's procedural rights because it failed to

provide notice of, and opportunity to respond to, the construction adopted by the Board. *Id.* at 1263.

Implicit assumes that the Board can take judicial notice of changed inventorship, reverse its own inurement finding, and then proceed to address the substantive antedating issues that it declined to reach because it found for Sonos on inurement and corroboration of conception. However, the Board cannot do this without giving Sonos an opportunity to respond with developed evidence and arguments. Finding that the certificates of correction operate as an *ex-post* determination that Implicit has antedated the asserted art or obviated the corroboration or inurement requirement would deny Sonos procedural rights under the APA and Due Process. For instance, Sonos would have proceeded differently had Implicit sought to correct inventorship during the IPR proceeding or before. Sonos would have sought to obtain evidence from Carpenter, at a minimum.

Like the situations in *Dell* and *Qualcomm*, Sonos would be denied the opportunity to respond to Implicit's new theory of inventorship by, for example, developing evidence and argument in rebuttal. Changing any part of the final written decisions in view of the inventorship correction without providing Sonos with notice and an opportunity to substantively respond to the merits of antedating the asserted prior art under Implicit's new inventorship theory would deny Sonos its rights under Due Process of law and thereby violate the APA.

Respectfully submitted,

Date:  July 5, 2024

By:  /s/ Cole B. Richter

Rory P. Shea
George I. Lee
Sean M. Sullivan
Cole B. Richter
**LEE SULLIVAN SHEA & SMITH LLP**
656 West Randolph, Suite 5W
Chicago, Illinois 60661
Tel.: (312) 754-9602
*Attorneys for Appellee, Sonos, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 20-1173, -1174

**Short Case Caption:** Implicit LLC v. Sonos, Inc.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes __12,293__ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: __07/05/2024__

Signature: /s/ Cole B. Richter

Name: Cole B. Richter