**Nos. 2020-1173, -1174**

IN THE
# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

IMPLICIT, LLC,

*Appellant*

v.

SONOS, INC.,

*Appellee*

KATHERINE K. VIDAL, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY
AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,

*Intervenor*

**Appeals from the United States Patent and Trademark Office,
Patent Trial and Appeal Board, IPR2018-00766 and IPR2018-00767**

## REPLY BRIEF OF IMPLICIT, LLC

Jason L. Romrell
Timothy P. McAnulty
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

J. Derek McCorquindale
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
1875 Explorer Street,
Suite 800
Reston, VA 20190-6023
(571) 203-2700

*Counsel for Implicit, LLC*

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

### <u>CERTIFICATE OF INTEREST</u>

**Case Numbers:** <u>2020-1173, -1174</u>

**Short Case Caption:** <u>Implicit, LLC v. Sonos, Inc.</u>

**Filing Party/Entity:** <u>Implicit, LLC</u>

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: <u>September 9, 2024</u>          Signature: <u>/s/ J. Derek McCorquindale</u>

Name: <u>J. Derek McCorquindale</u>

i

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☒ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☒ None/Not Applicable |
| Implicit, LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this **court** for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| William Ellsworth Davis, III | Davis Firm, P.C. | |
| Christian J. Hurt | Davis Firm, P.C. | |
| Kirk Voss | Davis Firm, P.C. | |
| Ben Singer | Singer Cashman LLP | |
| James Hopenfeld | Singer Cashman LLP | |
| Evan Budaj | Singer Cashman LLP | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☒ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☒ None/Not Applicable ☐ Additional pages attached

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

ARGUMENT ......................................................................................................2

I.   Section 256 Retroactively Applies to Inventorship Corrections
     Regardless of the Invalidity Ground ....................................................2

II.  The Board Abused Its Discretion in Applying the Equitable Doctrine of
     Forfeiture to Thwart the Retroactive Application of § 256 ..............7

     A.   Intervenor's Arguments for Applying Forfeiture Are Unconvincing..........7

          1.   Implicit's Corrected Inventorship Was Not "Untimely" ......................8

          2.   Implicit's Corrected Inventorship Was Not "New" or
               "Inconsistent" .....................................................................10

          3.   Implicit's Corrected Inventorship Cannot Be Ignored Simply
               Because It Was Made After the Board's First Round of Final
               Written Decisions ................................................................12

     B.   Sonos's and Intervenor's Examples of Forfeiture Are All from Non-
          Retroactive Contexts ................................................................16

          1.   General Forfeiture Cases Are Not Applicable Here ..........................16

          2.   *Lending Tree* Does Not Support Intervenor's View ..........................18

     C.   Intervenor Seeks Special Rules for Post-Grant Proceedings that
          Defy § 256 ..............................................................................20

          1.   There Are No Special Carveouts in § 256 for the Board's
               Trial Rules ..........................................................................20

          2.   The Board's Aspirational Timeliness Does Not Rewrite
               § 256 ..................................................................................21

     D.   Exceptions Apply Even Where Forfeiture Is Found................................22

III. The Board Abused Its Discretion in Applying the Equitable Doctrine of
     Waiver to Thwart the Retroactive Application of § 256................................23

iv

IV. The Board Abused Its Discretion in Applying the Equitable Doctrine of Judicial Estoppel to Thwart the Retroactive Application of § 256...................24

    A.  Implicit Did Not Advance "Clearly Inconsistent" Positions .....................25

    B.  Implicit Did Not Succeed in Persuading the Board to Accept a Particular Inventorship ................................................................................27

    C.  Implicit Would Gain No "Unfair Advantage" If Judicial Estoppel Were Not Applied .................................................................................28

CONCLUSION.................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Airbus DS Commc'ns, Inc. v. microDATA GIS, Inc.*,
No. 2015-1037, D.I. 28 (Fed. Cir. Mar. 18, 2015) ..............................5, 19, 23, 29

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
941 F.3d 1320 (Fed. Cir. 2019), *vacated and remanded by*
*United States v. Arthrex, Inc.*, 594 U.S. 1 (2021) ...................................................8

*Biomed. Pat. Mgmt. Corp. v. Cal. Dep't of Health Servs.*,
505 F.3d 1328 (Fed. Cir. 2007) .........................................................................26

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
157 F.3d 1340 (Fed. Cir. 1998) ...........................................................................7

*Cassidian Commc'ns, Inc. v. Microdata GIS, Inc.*,
No. 2:12-CV-162-JRG, 2015 WL 1848533 (E.D. Tex. Apr. 20,
2015) ...........................................................................................................6, 23, 29

*Egenera, Inc. v. Cisco Sys., Inc.*,
972 F.3d 1367 (Fed. Cir. 2020) ................................................................*passim*

*Eli Lilly & Co. v. Aradigm Corp.*,
376 F.3d 1352 (Fed. Cir. 2004) ...........................................................................7

*Emerson Elec. Co. v. SIPCO, LLC*,
No. IPR2016-00984, 2017 WL 4862106 (PTAB Oct. 25, 2017).......................14

*Forshey v. Principi*,
284 F.3d 1335 (Fed. Cir. 2002) (en banc) .......................................................22

*Google LLC v. IPA Techs. Inc.*,
34 F.4th 1081 (Fed. Cir. 2022) ......................................................................3, 13

*Google LLC v. Space Data Corp.*,
No. IPR2018-00947, 2018 WL 5832845 (PTAB Nov. 7, 2018).......................15

*In re Google Technology Holdings LLC*,
980 F.3d 858 (Fed. Cir. 2020) .....................................................................16, 23

*Hess v. Advanced Cardiovascular Sys., Inc.*,
106 F.3d 976 (Fed. Cir. 1997) ................................................................. 14

*Hormel v. Helvering*,
312 U.S. 552 (1941) .................................................................... 16, 17

*Lending Tree v. Zillow, Inc.*,
54 F. Supp. 3d 444 (W.D.N.C. 2014) ................................................. 18

*LendingTree, LLC v. Zillow, Inc.*,
656 F. App'x 991 (Fed. Cir. 2016) ........................................... *passim*

*Loper Bright Enters. v. Raimondo*,
144 S. Ct. 2244 (2024) .......................................................................... 21

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ........................................................................ 27, 29

*In re Nuvasive, Inc.*,
842 F.3d 1376 (Fed. Cir. 2016) ........................................................... 16

*Riverwood Int'l Corp. v. R.A. Jones & Co.*,
324 F.3d 1346 (Fed. Cir. 2003) ............................................................. 3

*Stark v. Advanced Magnetics, Inc.*,
29 F.3d 1570 (Fed. Cir. 1994) ............................................................. 19

*Transclean Corp. v. Jiffy Lube International, Inc.*,
474 F.3d 1298 (Fed. Cir. 2007) ........................................................... 28

*United States v. Arthrex, Inc.*,
594 U.S. 1 (2021) ................................................................................. 15

*Winbond Elecs. Corp. v. Int'l Trade Comm'n*,
262 F.3d 1363 (Fed. Cir. 2001) ........................................................... 14

*Woodford v. Ngo*,
548 U.S. 81 (2006) ............................................................................... 17

**Constitutional Provisions**

U.S. Const. art. II, § 2, Appointments Clause ....................................... 15

## Statutes

5 U.S.C. § 706................................................................................23

35 U.S.C. § 102.............................................................................3, 20

35 U.S.C. § 102(a) ..........................................................................2, 3

35 U.S.C. § 102(b) ............................................................................2

35 U.S.C. § 102(e) ......................................................................2, 3, 19

35 U.S.C. § 102(f).......................................................................*passim*

35 U.S.C. § 103................................................................................3

35 U.S.C. § 103(a) ............................................................................2

35 U.S.C. § 256..........................................................................*passim*

35 U.S.C. § 256(b) .........................................................................2, 29

35 U.S.C. § 282...............................................................................14

35 U.S.C. § 316(a)(11)........................................................................21

## Rules

Fed. R. Civ. P. 60............................................................................19

## Other Authorities

Hearings on H.R. 3760 Before Subcommittee No. 3 of the Committee
on the Judiciary, 82d Cong., 1st Sess. (1951)................................................ 3-4

## INTRODUCTION

Intervenor acknowledges that 35 U.S.C. § 256 applies retroactively to more than just inventorship disputes under 35 U.S.C. § 102(f) (pre-AIA). Intervenor Br. 19-20 n.1. Nevertheless, both Intervenor and Sonos insist that § 256 should be brushed aside here because Implicit did not correct its inventorship until after the Board's original final written decisions. But none of their arguments for disregarding the retroactive impact of § 256 prevails.

Implicit did not forfeit its rights under § 256; it timely raised corrected inventorship at the post-*Arthrex* Director Review stage after assessing the impact of the Board's fact-findings on inurement. Both Intervenor and Sonos ignore this Court's case law vacating final judgments of invalidity stemming from jury verdicts in light of § 256 inventorship corrections that issued during appeal, and they identify no cases that ultimately found forfeiture in this context. Intervenor and Sonos also fail to provide any viable reason why post-grant proceedings should be treated any differently from Article III judgments under § 256.

Intervenor's and Sonos's defenses of waiver and judicial estoppel are similarly unavailing. Neither Intervenor nor Sonos can explain how Implicit unequivocally and affirmatively renounced a *known right* to rely on a future inventorship correction. As for judicial estoppel, both Intervenor and Sonos admit that the Board never even addressed inventorship, Sonos Br. 32-33; Intervenor Br. 20, 39,

1

making it impossible for Implicit to have *succeeded in persuading* the Board to hold that a particular inventorship was correct.

<div align="center">**ARGUMENT**</div>

**I. Section 256 Retroactively Applies to Inventorship Corrections Regardless of the Invalidity Ground**

The plain language of § 256 is clear: "The error of omitting inventors or naming persons who are not inventors *shall not invalidate the patent* in which such error occurred *if it can be corrected* as provided in this section." 35 U.S.C. § 256(b) (emphases added). Congress did not impose a timing requirement to restrict when a correction of inventorship may be obtained, nor did Congress limit the statute's retroactive effect as a savings provision. In fact, Congress ensured that *no* subsection of the Patent Act appears in § 256—not § 102(f) nor § 102(a), (b), (e), or § 103(a) (pre-AIA). Instead, § 256 is applicable against all grounds of invalidity.

The Board correctly determined that § 256 applies retroactively for all invalidity purposes, not only to misjoinder and nonjoinder of inventors as a defense under § 102(f). Appx9-10. And Intervenor agrees: "There is no dispute that 35 U.S.C. § 256 applies retroactively in general and to more than just § 102(f) inventorship claims . . . ." Intervenor Br. 19-20 n.1; *accord* Implicit Br. 23-27.

Sonos's extreme position, on the other hand—that "the Board erred in interpreting § 256 as applying retroactively to cure all types of invalidity," Sonos

<div align="center">2</div>

Br. 40-41—is out of step with the interpretation of Intervenor, the Board, and settled federal court jurisprudence. Sonos, unsurprisingly, can provide examples of cases that overcome § 102(f) via corrections. *See* Sonos Br. 44-45. But Sonos has no answer for the numerous other cases Implicit cites that do so in other contexts of §§ 102 and 103 invalidity. *See, e.g.*, Implicit Br. 25; Appx10; Appx87.

For example, in *Riverwood*, this Court held in an obviousness analysis with § 102(e) prior art that if the patentee's inventorship correction was granted under § 256, then "the '806 patent would not be prior art to the '361 patent." *Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1357 (Fed. Cir. 2003) ("Because it is undisputed that Jones'[s] obviousness arguments relied extensively on the '806 patent as the invalidating prior art reference, we vacate the judgment of invalidity and remand the obviousness issue." (citing 35 U.S.C. § 256)). And in *Google*, this Court recently noted in an IPR appeal involving an obviousness analysis with § 102(a) prior art that *if* the patentee had sought certificates adding a particular inventor on the asserted patent under § 256, *then* the allegedly invalidating reference "would no longer be prior art 'by another.'" *Google LLC v. IPA Techs. Inc.*, 34 F.4th 1081, 1088 (Fed. Cir. 2022).[1] The problem for patentee IPA was that

---

[1] This tracks with the recognition that § 256 encompasses "salutary innovations in the law since there is no valid reason why a patent should not be corrected the same as an application in this regard." Hearings on H.R. 3760 Before

it had not actually sought correction of inventorship, not that correction under

§ 256 is somehow limited to overcoming § 102(f) only. *Id.*

All Sonos can suggest is that for such cases beyond § 102(f), those corrections

were requested, if at all, "during the proceeding." Sonos Br. 47-48. According to

Sonos, "these cases say nothing about the prospect of a party making a first

antedating rebuttal argument, losing the issue, the judgment becoming final,

jurisdiction passing to this Court, and then reopening the proceeding to make a

second antedating rebuttal argument different from the first." Sonos Br. 50-51. But

this simply recycles Sonos's position on "waived and forfeited arguments," Sonos

Br. 47-48, which is not statutory construction at all. Neither *Riverwood* nor *Google*

limited the interpretation of § 256 with a during-the-proceeding requirement.

Sonos cannot rewrite its procedural preferences into § 256 where Congress left it

wide open. At bottom, Sonos has no answer to what this Court, the Board, and the

Intervenor have already recognized—that § 256 permits retroactivity in general.

Both Sonos and Intervenor ignore the logical extent of this retroactivity

conclusion, contending that the Board's procedural rules can supersede the plain

language of the statute. Intervenor Br. 21-27; Sonos Br. 21-28. This is incorrect.

Article III courts assessing § 256 corrections have not simply declared "forfeiture"

---

Subcommittee No. 3 of the Committee on the Judiciary, 82d Cong., 1st Sess., 46 (1951).

to avoid the congressional intent of this savings statute. Instead, they have grappled with the unique contours and implications of § 256 as written.

Take *Airbus*—a case cited in Implicit's Opening Brief, Implicit Br. 40-41, but entirely ignored by Sonos and Intervenor. The district court had entered final judgment against Airbus based on a jury verdict that a co-inventor was omitted from the patent. *Airbus DS Commc'ns, Inc. v. microDATA GIS, Inc.*, No. 2015-1037, D.I. 28 (Fed. Cir. Mar. 18, 2015) (nonprecedential). After Airbus had filed its notice of appeal, the PTO issued a certificate of correction adding the previously missing co-inventor. *Id.* at 2. It did not matter that inventorship was corrected under § 256 *after* entry of final judgment—this Court remanded to allow the district court to determine whether to vacate the invalidity judgment in light of the changed inventorship. *Id.*

On remand, the district court expressly noted the seemingly paradoxical nature of § 256 when properly interpreted. Yet the court correctly reasoned that the retroactive effect overcame invalidity irrespective of the final jury verdict and subsequent correction mid-appeal:

> At a cursory level, Airbus's Motion might appear to present a difficult and seemingly circular proposition. Airbus's argument, paraphrasing the language of *Pannu*, is essentially as follows: if (1) the patentee does not claim relief under § 256; (2) the party asserting invalidity proves incorrect inventorship; and (3) the court holds the patent invalid for failure to comply with § 102(f), then (A) the patentee can then seek a certificate of correction of inventorship under § 256; (B) if the patentee obtains a certificate

5

correcting inventorship, the error under § 102(f) is eliminated; (C) the patentee may then move the Court to vacate its judgment of failure to comply with § 102(f) under Rule 60; and (D) the Court can grant the motion, vacating its judgment of invalidity for failure to comply with § 102(f). Considering § 256, this outcome should not be surprising. *It is clear to this Court—as it has been to the other Courts that have addressed § 256—that Congress intended § 256 to broadly allow the correction of errors in inventorship, and if correctable, such errors should not alone bring about invalidity.*

*Cassidian Commc'ns, Inc. v. Microdata GIS, Inc.*, No. 2:12-CV-162-JRG, 2015 WL 1848533, at *4 (E.D. Tex. Apr. 20, 2015) (Gilstrap, J.) (emphasis added). The *Airbus* district court did not stop at number "(1)" above and insist this must mean forfeiture because relief under § 256 was not initially claimed; rather, looking at the case law, legislative history, and especially the plaint text of § 256, the court correctly applied this savings provision. *See id.* The court granted the retroactive relief from invalidity that Congress prescribed for correct inventors, notwithstanding—indeed, because of—the elucidating work of a unanimous jury.

Sonos complains that "Implicit cites no case entitling it to go back and make a new argument before the Board once jurisdiction passes to this Court." Sonos Br. 23-25. *Airbus*, however, reopened a final judgment from a jury verdict already on appeal, and the district court reassessed validity in light of inventorship corrected on appeal. The Board should have done the same here.

**II. The Board Abused Its Discretion in Applying the Equitable Doctrine of Forfeiture to Thwart the Retroactive Application of § 256**

**A. Intervenor's Arguments for Applying Forfeiture Are Unconvincing**

Federal courts have long recognized "[t]he difficulty of determining legal inventorship." *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1352-53 (Fed. Cir. 1998). Indeed, the analysis usually "involv[es] many contributors at various times," *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1376 (Fed. Cir. 2020), such that "[t]he line between actual contributions to conception and the remaining, more prosaic contributions to the inventive process that do not render the contributor a co-inventor is sometimes a difficult one to draw," *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed. Cir. 2004).[2] Congress's intent was to attenuate this harsh reality and avoid extinguishing the rights of inventors if an error can be corrected. That is, in fact, the very purpose of § 256 as a savings provision. Implicit Br. 46-47.

Nevertheless, Intervenor contends that Implicit's allegedly "new, untimely argument after its post-decision correction of inventorship" was a forfeiture. Intervenor Br. 19; *see also* Sonos Br. 21-28. Implicit's arguments, as explained below, were not (1) "untimely," were not (2) "new," and were not (3) "post-

---

[2] The equivocal belief of Mr. Balassanian—a non-lawyer—regarding the legal question of inventorship before the Board's impactful fact-finding is of no moment here. Sonos Br. 5 (quoting Appx1974).

decision." These three mischaracterizations do not amount to a forfeiture in these proceedings.

### 1. Implicit's Corrected Inventorship Was Not "Untimely"

The core of Sonos's and Intervenor's untimeliness arguments—that Implicit allegedly forfeited the application of corrected inventorship because it was raised "for the first time *two years after* the Board issued its decisions"—ignores the full procedural history here. Intervenor Br. 20-21; *see also* Intervenor Br. 18, 26-27; Sonos Br. 25-26. Fixated only on *total time*, Sonos and Intervenor fail to acknowledge that, procedurally, Implicit sought its corrections and raised this argument at the proper juncture—after the Board issued final written decisions with factual findings that impacted inventorship and at the Director Review stage.

What Sonos and Intervenor do not say is that the "two years" of total time was due to intervening matters in *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019), *vacated and remanded by United States v. Arthrex, Inc.*, 594 U.S. 1 (2021). Following the Board's determinations of September 2019, Implicit's timely notice of appeal of November 25, 2019, stated that "the appointment of APJs violated the Appointments Clause of the U.S. Constitution." D.I. 1-2, 2. This Court's remedy post-*Arthrex* for such unconstitutional proceedings was vacatur of the Board's final written decisions. D.I. 61. So for the vast majority of the "two

years" complained of by Sonos and Intervenor, the Board's final written decisions were actually vacated and its fact-finding on inurement was rendered a nullity.

It was the PTO that then haled Implicit before the Supreme Court in *Hirshfeld v. Implicit, LLC*, No. 20-1631 (S. Ct.), where this case further languished until October 18, 2021, when the Supreme Court granted certiorari, vacated, and remanded for further proceedings. Only on November 30, 2021, did this Court reinstate the Board's final written decisions, setting a deadline of December 30, 2021, for Implicit to seek a Director Review—the constitutionally mandated end of the original IPR proceedings. D.I. 70. It would be Implicit's very first opportunity to present the corrected inventorship pursuant to the Board's reinstated fact-finding.

This history belies the disingenuous untimeliness charge that "Implicit waited years after the final written decisions were issued and jurisdiction had passed to this Court" before it raised the corrected inventorship. Sonos Br. 23-24. Aggrieved parties today initiate Director Review within just weeks. Not so in 2019 when this case was decided by the Board. From November 25, 2019, to December 30, 2021—766 days—Implicit sought to have these proceedings reviewed by a duly appointed officer.

By the time Commissioner Hirshfeld picked up Implicit's review request to complete the IPR proceedings, all arguments regarding correction of inventorship

were before him. When its request was denied without opinion, Implicit timely appealed again, and this Court remanded back to the Board so that it could "consider the impact of these intervening circumstances on the decisions on appeal in the first instance . . . ." D.I. 85, 2. Instead of performing the task assigned on the merits, the Board just deemed Implicit "untimely" and skirted substantive review yet again. Appx24-25; Appx101-102.

### 2. Implicit's Corrected Inventorship Was Not "New" or "Inconsistent"

Intervenor argues that Implicit presents a "new, inconsistent theory of inventorship." Intervenor Br. 38-39; Sonos Br. 1, 9-38 (repeatedly calling Implicit's inventorship correction a "new antedating argument"). But Implicit's position is not "new" nor is it "inconsistent." From the very beginning, Implicit has presented the same set of operative facts leading to the inventions, detailing the various efforts of three individuals: company founder Edward Balassanian, development manager Scott Bradley, and engineering master Guy Carpenter. Appx483-501. These have always been identified as the three relevant individuals, even if the Board's fact-finding shed additional light on their respective contributions for purposes of named inventorship. *See* Implicit Br. 8-14.

Implicit has always maintained that it could antedate *Janevski* by virtue of the December 9, 2001, "synchronization.doc." Implicit Br. 13-14, 26. The argument is not "new" by any means, and there is no inconsistency in these facts as Implicit

presented them. What *is* "new" are the Board's factual findings and conclusions regarding this document. Specifically, the Board found that "the December 9 version of this document, which appears to be the version that was the basis for the provisional application, was authored by non-inventor Mr. Carpenter." Appx123-124. But according to the Board, there was no evidence "that anyone else was involved in development of the source code besides Mr. Carpenter." Appx46-47; Appx123-125; Appx156; Appx2920-2922; Appx2923; Appx3360. That is, the Board found that Mr. Carpenter was the sole creator of the very document that became the provisional patent application filed just *eight days later*, Appx5356-5359, yet Mr. Carpenter was not working at the request of Mr. Balassanian and Mr. Bradley. Section 256 provided a means for Implicit to consider the practical impact of these highly relevant factual findings on the complicated legal determination of inventorship. Rather than "inconsistent," Implicit's correction of inventorship is now harmonized with the Board's view of the evidence.

Intervenor offers a parade of horribles if Implicit were permitted to rely on its corrected inventorship here: "[U]nder Implicit's reading, § 256 would allow it to assert Guy Carpenter as a co-inventor on remand, but if its evidence again fails . . . , it is free to unwind another final decision and try again with yet another inventorship theory (perhaps with a different member of the engineering staff) after yet another certificate of correction." Intervenor Br. 29-30. Nonsense. This is

simply not a case where a wholly new actor can be introduced out of the blue, decades later, to backfill factual holes in antedating a reference. To be clear, this is the same trio previously identified as performing the same activities alleged—only the legal interpretation of these circumstances has been clarified. Implicit has never made inconsistent statements about objective facts; the correction is due to context-related factual findings made *by the Board* that necessarily implicate inventorship.

Importantly, the baseline facts are undisputed here, circumscribing the universe of possible inventorship claims. In response to the same concerns that Intervenor now raises, this Court in *Egenera* identified the appropriate policing mechanism. It is not to constrain the congressional intent of § 256, "a savings provision, functioning to prevent invalidation when correction is available. It is the inequitable-conduct rules that provide a safety valve in the event of deceit." *Egenera*, 972 F.3d at 1376-77 (citation omitted). Neither the Board nor any party has ever alleged, in hundreds of pages, that Implicit has acted fraudulently.

### 3. Implicit's Corrected Inventorship Cannot Be Ignored Simply Because It Was Made After the Board's First Round of Final Written Decisions

It is unclear what Intervenor refers to in claiming forfeiture by a "post-decision" correction. *See* Intervenor Br. 19. If by "post-decision," Intervenor suggests that Implicit needed to argue a different inventive entity prior to the Board's final written decisions, this cannot be correct. Intervenor repeats the

Board's flawed criticism: "[I]f Patent Owner's evaluation of its own evidence now justifies a change in inventorship, that evaluation should have also justified such a change during trial . . . ." Intervenor Br. 29 (quoting Appx23). That misses the point. Implicit was entitled to reevaluate inventorship in light of the Board's fact-finding and thereafter seek a change, just like the patentee in *Egenera*. *See* 972 F.3d at 1378-79. Inventorship is notoriously "complicated," *id.* at 1376, and the Board's final written decisions here informed Implicit's assessment of the evidence, prompting its statutory right to seek inventorship correction when it did.

Moreover, Intervenor does not credibly explain in practice how Implicit should have raised this argument earlier. It is no answer to say that, "in its Patent Owner Response, Implicit was free to argue alternative inventorships in attempting to antedate the prior art." Intervenor Br. 29, 39. In fact, the opposite is true—a patentee is barred from arguing an alternate inventive entity unless and until the inventorship correction is formally sought. *Google*, 34 F.4th at 1088 ("IPA cannot raise this argument as a defense without actually seeking correction of inventorship of the patents, which it has not."). Before the Board's impactful fact-findings on inurement, Implicit had justifiably relied on the inventorship listed on the presumptively correct face of the patent, duly issued by the PTO nearly two

decades ago.[3] "The Patent Act accords each patent a presumption of validity." *Winbond Elecs. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1371 (Fed. Cir. 2001) (citing 35 U.S.C. § 282). "This presumption embraces as well the notion that a patent's named inventors are the true and only inventors." *Id*. (citing *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997)).

A patentee is not forced to weaken its litigation position by making hypothetical inventorship cases simultaneously. Despite what Intervenor is suggesting, had Implicit tried to argue that Mr. Carpenter was both not an inventor *and* an inventor at the same time, the alternative position would have been rejected as speculative and not ripe. *Cf. Emerson Elec. Co. v. SIPCO, LLC*, No. IPR2016-00984, 2017 WL 4862106, at *12 (PTAB Oct. 25, 2017) (the Board explaining that, "at this stage of the proceeding[,] the priority date of the '780 patent has not been corrected, and we, therefore, consider [the '732 patent] as prior art"). Sonos and Intervenor point to no case where a correction under § 256 has been successfully argued in post-grant proceedings on an alternative basis, but there are examples where the Board has acknowledged that "[c]orrecting inventorship is not

---

[3] Both Intervenor and Sonos try to relitigate alleged shortcoming with Implicit's inurement evidence. Intervenor Br. 35 n.5; Sonos Br. 5-6, 15-16. But their arguments continue to miss the "intervening circumstances" here—Mr. Carpenter is an *inventor*, and this Court remanded for the Board to determine the impact of that change. D.I. 85, 2.

14

within the scope of an *inter partes* review." *Google LLC v. Space Data Corp.*, No. IPR2018-00947, 2018 WL 5832845, at *2 (PTAB Nov. 7, 2018). Implicit, like every other patentee, was entitled to revisit the complex legal question of inventorship in view of impactful Board fact-finding and *then* lodge a § 256 correction petition—in this case, before Director Review. Congress never intended to limit the statute in the way Intervenor demands now.

If by "post-decision," Intervenor implies that the IPR proceedings were somehow already fully complete by the time Implicit presented its corrected inventorship at the Director Review stage, that is also incorrect. The Supreme Court held that AIA post-grant proceedings are not final from an Appointments Clause perspective unless and until the Director can exercise the discretion for review. *See Arthrex*, 594 U.S. at 26 ("Although the APJs' appointment by the Secretary allowed them to lawfully adjudicate the petition in the first instance, they lacked the power under the Constitution *to finally resolve the matter* within the Executive Branch." (emphasis added) (citation omitted)). Because it was not yet "*finally resolve[d]*" before the agency, it is inaccurate for Sonos and Intervenor to suggest this this was not raised "during the proceedings." *See, e.g.*, Sonos Br. 25, 49; Intervenor Br. 1. It was.

**B. Sonos's and Intervenor's Examples of Forfeiture Are All from Non-Retroactive Contexts**

For the general proposition that arguments not timely raised are forfeited, Intervenor offers up all the standards going back to *Hormel v. Helvering*, 312 U.S. 552, 556-57 (1941). Intervenor Br. 24-25. No one questions that the "*general* rule serves important public purposes." *Id.* (emphasis added). But none of the *general* cases raised by Sonos and Intervenor for forfeiture address a *specific* statute like § 256—designed by Congress to be applied retroactively as a savings provision, unencumbered in its plain language by any timing restriction. *Compare* Intervenor Br. 23-25, *with* Implicit Br. 38-41 (citing *Airbus* and *LendingTree, LLC v. Zillow, Inc.*, 656 F. App'x 991 (Fed. Cir. 2016)).

**1. General Forfeiture Cases Are Not Applicable Here**

Sonos and Intervenor cite *In re Nuvasive, Inc.*, 842 F.3d 1376, 1379-82 (Fed. Cir. 2016), and *In re Google Technology Holdings LLC*, 980 F.3d 858, 862 (Fed. Cir. 2020). Intervenor Br. 23-25; Sonos Br. 21-22. These are run-of-the-mill forfeiture cases, but neither had anything to do with a statute of retroactive application like § 256. Moreover, this Court has noted that appellate "review" requires that arguments be "raised and considered in the tribunal of first instance," *In re Google Tech.*, 980 F.3d at 864 (citation omitted), because it does not have "the benefit of the [PTAB]'s informed judgment," *In re Nuvasive*, 842 F.3d at 1380-81 (citation omitted). Here, however, this Court *already* remanded to get the

16

Board's judgment on the impact of Implicit's certificates of correction. D.I. 85, 2. And *Woodford v. Ngo*, 548 U.S. 81 (2006), is also inapposite—that case stands for the proposition that the administrative tribunal must have "*erred against objection made at the time appropriate under its practice*." Intervenor Br. 24 (quoting *Woodford*, 548 U.S. at 90). That is exactly what Implicit did at the Director Review step—the first post-*Arthrex* opportunity that Implicit had to raise how the Board's reinstated factual findings had impacted inventorship.

Similarly, the *Hormel* rule applies to protect against surprise issues on appeal for which parties have not had the opportunity to present relevant counterarguments below. 312 U.S. at 556. Sonos, however, *did* have the "opportunity to respond," Sonos Br. 52-53, to Implicit's correction of inventorship. D.I. 85, 2. This Court remanded for such proceedings, not only providing for Board review in the first instance, but also curing any potential claims of unfairness to Sonos in the process. The Board on remand *did* review Sonos's arguments, which led it to erroneously apply forfeiture—which this Court had already rejected twice, *see* Implicit Br. 18-19—and judicial estoppel. In fact, the Board issued new final written decisions on remand, which Implicit timely appealed. Appx1-26; Appx78-103. Accordingly, none of this general law supports a finding of forfeiture here. Intervenor Br. 19-25; Sonos Br. 21-22.

## 2. *Lending Tree* Does Not Support Intervenor's View

Intervenor does claim, in fact, to have mustered one relevant forfeiture case under § 256 specifically—*Lending Tree v. Zillow, Inc.*, 54 F. Supp. 3d 444, 451-52 (W.D.N.C. 2014). Intervenor Br. 25. According to Intervenor:

> A district court has also found that a correction of inventorship cannot be raised at a subsequent hearing where it was not argued at an initial hearing. In *Lending Tree*, the court declined to set aside a jury's verdict as invalid for incorrect inventorship, noting that the patentee failed to raise it during trial. . . . Thus, the court determined that the evidence regarding inventorship had already been considered and decided by the jury.

*Id.* (citing only *Lending Tree*, 54 F. Supp. 3d at 451-52). In particular, the *Lending Tree* district court applied forfeiture because "following return of the jury verdict, LendingTree sought—*for the first time*—a special interrogatory to the jury as to the identification of the proper inventors." *Lending Tree*, 54 F. Supp. 3d at 449 (emphasis added).

But Intervenor does not finish the story. Notwithstanding the post-verdict timing of Lending Tree's argument, this Court *vacated* the district court's judgment of invalidity "[i]n light of the PTO's [intervening] corrections" of inventorship under § 256. *Compare id.*, *with Lending Tree*, 656 F. App'x at 998-1000. Specifically, this Court held that,

> [i]n this case, absent a remand, the judgment of invalidity will remain in place, *which would appear to violate the letter and spirit of § 256*, for one or more alleged errors will have

invalidated the patents in suit notwithstanding that they could have been (and in fact might have been) fully corrected.

*Lending Tree*, 656 F. App'x at 999 (emphasis added).

The fact that Implicit's certificates of inventorship correction were issued during the appeal was immaterial. Expressly drawing upon its past practice in *Airbus*, this Court reasoned in *Lending Tree* that

> [a] remand is also consistent with our approach in *Airbus* . . . . In that case, the district court entered judgment against Airbus "based on a jury verdict that a co-inventor . . . was omitted from the patent." *After Airbus filed its notice of appeal, the PTO issued a Certificate of Correction that added the omitted inventor*. We granted a limited remand to allow the district court to determine whether to vacate the invalidity judgment pursuant to Fed. R. Civ. P. 60(b).

*Id.* (emphasis added) (citing *Airbus*, No. 2015-1037, D.I. 28, 2).

It makes no difference that *Lending Tree* and *Airbus* were appeals from Article III district courts subject to Fed. R. Civ. P. 60. This Court recognized in both cases that § 256 requires reassessing validity in light of post-trial corrections to inventorship; forfeiture had no place in the analysis. *See Stark v. Advanced Magnetics, Inc.*, 29 F.3d 1570, 1573-77 (Fed. Cir. 1994) (holding that "[s]ection 256 does not limit the time during which inventorship can be corrected" and the regulation governing *issued patents* "contains no diligence requirement"); Sonos Br. 24 (misstating that *Stark* imposes a diligence requirement for IPRs). Nor does it matter that *Lending Tree* and *Airbus* involved invalidity under § 102(f) while this

case involves § 102(e). After all, § 256 is not limited to invalidity under a particular subsection of § 102 but applies retroactively to *all* claims where inventorship is an issue. *See* Intervenor Br. 19-20 n.1.

## C. Intervenor Seeks Special Rules for Post-Grant Proceedings that Defy § 256

Instead of the liberal § 256 remedy that the Article III courts routinely provide, *see supra* Sections I, II.B.2, Intervenor would have this Court create a restrictive procedural carveout for post-grant proceedings. This would, however, make effective application of § 256 impossible in IPRs, eviscerating the legislative intent and eliminating the beneficial insight provided by Board factfinders in the complex analysis of inventorship.

### 1. There Are No Special Carveouts in § 256 for the Board's Trial Rules

Intervenor argues that "[t]he Board properly applied its scheduling order and Trial Practice Guide, both of which state that arguments not presented in the patent owner's response are forfeited." Intervenor Br. 21-22; *see also* Appx23 (citing scheduling order at Appx463). But nothing in § 256 makes an exception for the Board's scheduling order or Trial Practice Guide. A two-track application of § 256—one where Article I tribunals are free to cabin the statute to their own procedural schedules but Article III courts are bound by the statute regardless of timing—was never envisioned by Congress in designing this special savings

provision. And neither the scheduling order nor the Trial Practice Guide authorizes the Board to impose its own brand of forfeiture that limits the plain language of § 256. *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024) ("Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires.").

### 2. The Board's Aspirational Timeliness Does Not Rewrite § 256

While admitting that § 256 applies retroactively, Intervenor Br. 19-20 n.1, Intervenor contends that the Board's forfeiture rule here is necessary to ensure compliance with the Board's one-year window for issuing a final written decision. Intervenor Br. 23. But that argument cannot be squared with 35 U.S.C. § 316(a)(11), which provides "that the Director may, for good cause shown, extend the 1-year period by not more than 6 months." Nor can it be squared with the many cases that are remanded by this Court and spend more than 18 months total before the Board.

Where § 256 is available and invoked before Director Review—as Implicit sought here—the office of the Director already handles the correction petition and could seamlessly remand for a limited reconsideration of the merits under the new inventive entity. In fact, Implicit requested as much here. *See* Appx1116-1121; Appx4799-4804. But Implicit's petitions for Director Review were denied out of hand, Appx1123-1124; Appx4806-4807, and this case went up on appeal only to

have this Court grant the limited remand that Commissioner Hirshfeld had previously refused. D.I. 85, 2. This was a waste of time and process. The Director need not outsource what can be done conveniently in one step by the same office. Any concern about timing rings hollow inasmuch as the Board's limited review on remand took another 10 months yet still avoided the merits consideration it was ordered to perform in the first instance.

Simply put, a venue-contingent outcome cannot have been what Congress had in mind when it enacted § 256.

### D. Exceptions Apply Even Where Forfeiture Is Found

Even if forfeiture were applicable here—it is not—this Court has discretion whether to apply it. Indeed, "appellate courts may apply the correct law even if the parties did not argue it below and the court below did not decide it, but only if an issue is properly before the court." Intervenor Br. 25-26 (citing *Forshey v. Principi*, 284 F.3d 1335, 1355-58 (Fed. Cir. 2002) (en banc)). Such an exception would be fully warranted here. The Board's final written decisions on remand— which Implicit timely appealed—expressly addressed the equitable doctrines of forfeiture/waiver and judicial estoppel, so there is no question that those issues are properly before this Court. And while Intervenor alleges that Implicit has forfeited application of the corrected inventive entity to the validity dispute here, it does not dispute that the corrected inventive entity necessarily applies retroactively under

§ 256. Intervenor Br. 19-20 n.1. Under similar circumstances—i.e., post-trial changes in inventorship under § 256—this Court has vacated and remanded for reconsideration of validity, applying the corrected inventive entity without invoking forfeiture. *See Lending Tree*, 656 F. App'x at 998-1000; *Airbus*, No. 2015-1037, D.I. 28, 2; *see also Cassidian*, 2015 WL 1848533, at *4.

## III. The Board Abused Its Discretion in Applying the Equitable Doctrine of Waiver to Thwart the Retroactive Application of § 256

On remand, the Board "determine[d] that Patent Owner ha[d] waived its assertions on revised inventorship because it failed to present them during the trial in these proceedings." Appx22-23. According to Intervenor, the Board did not abuse its discretion in finding "waiver" because, at one point, it made the correct distinction between "waiver" and "forfeiture." Intervenor Br. 21 n.2, 22 n.3, 36-37; *see also* Appx23 n.11; Appx100 n.11. But there is no way to defend the Board's determination that Implicit intentionally relinquished a *known* right in failing to argue in its patent owner's response that Mr. Carpenter was also an inventor.[4] That was only made apparent after the Board made fact-findings impacting

---

[4] The Board did more than just switch terms—it admittedly conflated the unique elements of each, confessing that its opinion used the term "waiver" to denote "both waiver and forfeiture." *See* Appx23 n.11; Appx100 n.11. This is a separate abuse of discretion, as the Board's confused analysis in this section—especially when it came to "intentional relinquishment . . . of a known right"—errs on the law and lacks the requisite clarity under 5 U.S.C. § 706. *See* Appx23 n.11 (quoting *In re Google Tech.*, 980 F.3d at 862); Implicit Br. 37-38.

inventorship. Patentees need not have a crystal ball to preserve this statutory right—the whole point of Congress's savings provision was to permit patentees to proceed without fear of losing validity simply because, at some later date, an error in inventorship is discovered.

Neither Sonos nor Intervenor can point to a moment when Implicit unequivocally and affirmatively renounced Mr. Carpenter's inventorship and declared in the proceedings that it would never exercise its statutory right to correct when it later learned the Board's fact-findings. Both argue instead that a waiver arose passively by virtue of daring to rely on the listing of inventors on the patent since 2006. Intervenor Br. 35-37; Sonos Br. 22-24. Relying on the inventorship on the face of a patent, however, was not a "waiver" in *Lending Tree* or *Airbus*. Nor is it "waiver" here.

## IV. The Board Abused Its Discretion in Applying the Equitable Doctrine of Judicial Estoppel to Thwart the Retroactive Application of § 256

In its tepid defense of judicial estoppel, Intervenor again suggests that "there is no reason that Implicit could not have argued an alternative theory of inventorship that included Mr. Carpenter during the IPR proceedings." Intervenor Br. 39. But this is just rewarming its forfeiture position, which Implicit has already debunked. *See supra* Sections I, II. And again—Implicit *did* raise this "during the IPR proceedings" at the Director Review stage, the step immediately after the Board made new fact-findings that were highly relevant to inventorship.

Intervenor similarly glosses over *Egenera* by pointing to its arguments addressing forfeiture. Intervenor Br. 39. But Sonos notes elsewhere that "[i]n *Egenera*, this Court did not address waiver or forfeiture, but rather addressed the issue of judicial estoppel." Sonos Br. 25. In any event, this Court in *Egenera* roundly rejected application of the judicial estoppel doctrine in the context of § 256 where, as here, there were intervening determinations that led to changed inventorship and the patentee did not succeed in persuading a tribunal to accept its first position. *See* 972 F.3d at 1378-82.

## A.  Implicit Did Not Advance "Clearly Inconsistent" Positions

It was not even deemed "clearly inconsistent" and "mutually exclusive" in *Egenera* that a different inventive entity was previously asserted, then corrected, and then changed back by an issued correction certificate. *Id.* at 1379 (citation omitted). If it is fatally inconsistent for Implicit to have first relied on the inventorship listed in a presumptively correct patent, then this factor would always favor judicial estoppel. Yet *Egenera* shows otherwise. This should end the judicial estoppel inquiry at factor one.

Sonos and Intervenor make too much of the fact that *Egenera*'s correction was pursuant to a new claim construction where § 102(f) had been a defense. Sonos Br. 31-32; Intervenor Br. 34-35. As an initial matter, the statute is completely silent as to timing, litigation context, a party's intent, or anything else that may have

prompted reconsideration—all that matters is whether the correction can be made

pursuant to § 256. *See* Intervenor Br. 19-20 n.1. But even setting aside the broad

scope of the statute, claim construction is not the exclusive context in which a

factfinder could inform correct inventorship, and nothing in *Egenera* suggests

otherwise. Here, it was the final written decisions—the first opportunity under IPR

procedure for the Board to weigh in—that rejected Implicit's inurement theory, an

issue ancillary to but still impacting correct inventorship no less than the claim

construction in *Egenera*. Appx46-47; Appx123-125.

If, as the Board found, Mr. Carpenter's creation of "synchronization.doc"—the

very document that became the provisional application just eight days later—did

not evidence conception and reduction to practice inuring to the benefit of

Mr. Balassanian and Mr. Bradley, then that materially changes the legal analysis

on inventorship. *See Egenera*, 972 F.3d at 1379 (quoting *Biomed. Pat. Mgmt.*

*Corp. v. Cal. Dep't of Health Servs.*, 505 F.3d 1328, 1341-42 (Fed. Cir. 2007), for

the proposition that "inconsistency" in the judicial estoppel context "is excused by

an intervening change in the law")). And in view of the Board's impactful findings,

it was entirely justified for Implicit to add Mr. Carpenter as an inventor. That is not

an "inconsistent" position—it actually harmonizes the Board's views with the

inventive entity listed on Implicit's corrected patent. "[O]nce those issues were

decided, it was entirely consistent for [Implicit] to request an accompanying formal

correction of inventorship." *Id.* In this way, § 256 works to increase accuracy and reward true inventors.

## B. Implicit Did Not Succeed in Persuading the Board to Accept a Particular Inventorship

At its core, the second factor considers "whether the party has *succeeded in persuading* a court to accept [the] party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (emphasis added) (citation omitted). Here, however, Implicit never succeeded in "*persuading*" the Board to accept anything regarding inventorship—which is a legal conclusion rather than an objective fact, *see Egenera*, 972 F.3d at 1379-80—so there is no risk of inconsistent court determinations. Implicit Br. 31-34.

In fact, the Board itself admitted that "[w]e made *no such determination*, however, specifically *regarding inventorship* in our Final Written Decisions." Appx15 (emphases added); Appx92; *see also* Appx13; Appx15-16; Appx17-18 n.9; Appx90; Appx92-93; Appx94-95 n.9. Sonos and Intervenor acknowledge as much. Sonos Br. 32-33; Intervenor Br. 20, 39. This alone should resolve the second factor in Implicit's favor—the Board did not even *address* correct inventorship, much less was it *persuaded to adopt* and actually *hold* a particular inventorship.

Rather than arguing for the Board to accept the inventorship originally identified on the face of the patent, Implicit was making an *inurement* argument consistent with the patent to swear behind a reference—there was no risk or perception of a court being misled to adopt a legal conclusion on inventorship. Sonos and Intervenor try to subdivide Implicit's position to fit their argument (*e.g.*, "Implicit's [i]nventorship [p]remise," Sonos Br. 34-38), but never did Implicit "*succeed[] in persuading*" the Board to accept that it could antedate *Janevski* through inurement. For judicial estoppel purposes, that was the "real" issue Implicit argued, which Sonos does not dispute.[5] *See* Sonos Br. 30-31 (describing Implicit's "original antedating argument"), 35. The Court should reject Sonos's revisionist attempts to reduce Implicit's position into such minute "[i]nventorship [p]remise[s]," Sonos Br. 34-38, that the Board never cast "into the crucible of examination." *Egenera*, 972 F.3d at 1380.

### C. Implicit Would Gain No "Unfair Advantage" If Judicial Estoppel Were Not Applied

Implicit's correction certificates were obtained by the process the statute ordained and the Director approved. And § 256 unequivocally provides that the

---

[5] Sonos points to *Transclean Corp. v. Jiffy Lube International, Inc.*, 474 F.3d 1298 (Fed. Cir. 2007), but that case is inapposite here. Sonos Br. 36-38. The *Transclean* district court expressly found "a 'special . . . relationship' of privity." 474 F.3d at 1305 (citation omitted). Here, however, the Board made "no such determination" on inventorship. Appx15; Appx92.

"error of omitting inventors or naming persons who are not inventors shall not invalidate" Implicit's patents. 35 U.S.C. § 256(b). This Court has recognized the retroactive application of this savings provision even for corrections occurring *after a jury verdict. See Lending Tree*, 656 F. App'x at 998-1000; *Airbus*, No. 2015-1037, D.I. 28, 2; *see also Cassidian*, 2015 WL 1848533, at *3-4. There is no "unfair advantage," *New Hampshire*, 532 U.S. at 751, in Implicit exercising the very rights that Congress has expressly provided under § 256. Nor is it a "waste of resources," Sonos Br. 39, to apply the corrected inventorship when assessing the validity of Implicit's patents. *Egenera*, 972 F.3d at 1377 ("Indeed, § 256 is a savings provision, functioning to prevent invalidation when correction is available."). If Sonos believes otherwise, it should take this up with Congress.

Moreover, this Court already afforded Sonos an opportunity to go back before the Board and address the impact of the corrected inventorship on the merits of its IPR validity challenge. D.I. 85, 2. If there were further analyses and questions to resolve while reassessing validity under the corrected inventorship, these could have been flushed out by the Board on remand—and still can be—as this Court previously ordered. *See* Intervenor Br. 40.

## CONCLUSION

For the foregoing reasons in Implicit's Opening and Reply Briefs, the Court should vacate the Board's final written decisions and instruct the Board to assess

the impact of Implicit's corrected inventorship on the merits of the unpatentability decisions in this case.

Date: September 9, 2024

Respectfully submitted,

<div style="margin-left:40%">

 /s/  J. Derek McCorquindale
J. Derek McCorquindale
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
1875 Explorer Street
Suite 800
Reston, VA 20190-6023
(571) 203-2700

Jason L. Romrell
Timothy P. McAnulty
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

*Counsel for Implicit, LLC*

</div>

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2020-1173, -1174

**Short Case Caption:** Implicit, LLC v. Sonos, Inc.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

[✔] the filing has been prepared using a proportionally-spaced typeface and includes __6,993__ words.

[ ] the filing has been prepared using a monospaced typeface and includes _____ lines of text.

[ ] the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 09/09/2024

Signature: /s/ J. Derek McCorquindale

Name: J. Derek McCorquindale